## HIGGINS v. UNITED STATES.
### No. 11737.

United States Court of Appeals District of Columbia Circuit.

Reargued Nov. 23, 1953.

Decided Jan. 28, 1954.

Mr. Curtis P. Mitchell, Washington, D. C., with whom Messrs. Frank D. Reeves, B. Dabney Fox, and William Beasley Harris, Washington, D. C., were on the brief, for appellant.

Mr. Samuel J. L'Hommedieu, Jr., Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., Thomas A. Flannery and William J. Peck, Asst. U. S. Attys., Washington, D. C., at time brief was filed, were on the brief, for appellee.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Messrs. Charles M. Irelan, U. S. Atty., and William R. Glendon, Asst. U. S. Atty., Washington, D. C., at time record was filed, also entered appearances for appellee.

Before EDGERTON, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

Appellant was convicted of unlawfully possessing marihuana. 26 U.S.C. § 2593(a), 53 Stat. 281. The drug was seized during a search of his room without a warrant. Seeds were found in a paper bag in a chest of drawers, and cigarettes in the pocket of a coat hanging in a closet. The seeds and cigarettes were introduced in evidence. The present question is whether appellant's motion to suppress the evidence, on the ground that the search was unlawful, should have been granted. The trial court, sitting without a jury, found that appellant consented to the search.[1]

At the hearing on the motion to suppress, a police sergeant testified: " * * I identified myself to him as a police officer and asked him if I couldn't talk to him in his room. * * * He stated

1. The government does not contend that there was probable cause for the search.

that that was all right and asked me to accompany him to his room. * * * I told him then about the information that I had, that I had received from the various sources, and he denied this information, denied that he was engaged in any narcotic drug traffic. I asked him then if I could look around. He stated that I could, was perfectly welcome to look anywhere in his room that I wanted to." Another policeman gave similar testimony. All this was repeated in substance at the trial. Appellant testified at the trial that the officers arrested him in the street, took him to his room, and searched it without asking or receiving permission.

■ We assume for present purposes that the officers' testimony was true and the appellant's false. Even so, we think the record does not support the finding that appellant consented to the search. We think the motion to suppress should have been granted.

■ Words or acts that would show consent in some circumstances do not show it in others. "Non-resistance to the orders or suggestions of the police is not infrequent * * *; true consent, free of fear or pressure, is not so readily to be found." Judd v. United States, 89 U.S.App.D.C. 64, 66, 190 F. 2d 649, 651. If a valid confession precedes a search by police, permission may show true consent to the search. That was the situation in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, on which appellee relies. But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered. It follows

that when police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by denial of guilt, do not show consent; at least in the absence of some extraordinary circumstance, such as ignorance that contraband is present. No such circumstance is shown here.

Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, illustrates the principle. There policemen knocked on a door and "a voice inside asked who was there. 'Lieutenant Belland,' was the reply. There was a slight delay, some 'shuffling or noise' in the room and then the defendant opened the door. The officer said, 'I want to talk to you a little bit.' She then, as he describes it, 'stepped back acquiescently and admitted us.'" 333 U.S. at page 12, 68 S.Ct. at page 368. The Supreme Court held that the search which followed was unlawful and the evidence seized should have been suppressed. The Court said: "Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." 333 U.S. at page 13, 68 S.Ct. at page 368. Cf. Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381; Judd v. United States, supra; Nelson v. United States, 1953, 93 U.S.App.D.C. ——, 208 F.2d 505, certiorari denied 346 U. S. 827, 74 S.Ct. 48; Catalanotte v. United States, 6 Cir., 1953, 208 F.2d 264. We do not agree with United States v. MacLeod, 7 Cir., 1953, 207 F.2d 853.

Reversed.