Donald A. **FISHER**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 2968–2970.

Municipal Court of Appeals for the District of Columbia.

Submitted April 23, 1962.

Decided July 12, 1962.

Carl J. Morano, Washington, D. C., for appellant.

David C. Acheson, U. S. Atty., Nathan J. Paulson, Timothy C. Murphy, and Abbott A. Leban, Asst. U. S. Attys., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted of (1) petit larceny of meperidine, stipulated to be a "narcotic drug" within the meaning of the Uniform Narcotics Act, Code 1961, 33–401 to 33–425; and (2) the unlawful possession of this drug and biphetamine, stipulated to be a "dangerous drug" within the meaning of the Dangerous Drug Act, Code 1961, 33–701 to 33–712. The purported errors assigned relate to the denial of a motion to suppress and a motion for judgment of acquittal. Appellant contends that he was in effect arrested when first questioned by the police although not taken into custody; that he was subjected to police interrogation for a period of two days prior to the issuance and execution of the warrants for his arrest and the search of his car; that the purpose of the interrogation was to secure information to justify the subsequent issuance of the warrants; and that his cooperation did not result from an intelligent waiver of his rights, but rather from acquiescence in the face of police authority.

The following facts were either stipulated by the parties or established by the testimony of the sole witness, the investigating and arresting officer:

On June 23, 1961, the Gilpin Drug Company entrusted to appellant, a truck driver in its employ, a package containing ten vials of meperidine with instructions to mail it to the White Laboratories in Baltimore, Maryland, and obtain a mailing receipt. The meperidine was never received by White, and Gilpin notified the police. On July 13, 1961, appellant was summoned to his employer's office, and in the latter's presence, was informed by Officer Panetta of the Narcotics Squad that he was investigating the disappearance of the drugs. Appellant was questioned not more than five minutes, during which time he related that he was fairly certain he had mailed the package and had placed the receipt on the company's return desk. Officer Panetta asked appellant whether he would be willing to submit to a polygraph test, explaining its nature and that the test results could be used against him. Appellant replied, "Sure. Any time." Appellant and the officer then drove to police headquarters. When they were informed that the polygraph test could not be given for an hour, the officer suggested that appellant "not wait around," and asked if he could come back the next day. Appellant said he could, and an appointment was made for ten o'clock.

The following morning appellant returned, and after assisting Officer Panetta in filling out the preliminary papers, was taken to the polygraph room. Around "lunch time," and about thirty seconds after appellant had finished the test, the polygraph operator asked Officer Panetta to come into the office. Appellant then told the officer that he had the drugs and would take the officer to his car and turn them over to him. Appellant explained that on the day he was instructed to mail the drugs, he had several other packages to handle and did not have time to mail it; that he placed everything on the front seat of the car, and apparently the package containing the meperidine fell under the seat where he did not notice it until after he was questioned about it by his employer. Appellant stated that he became frightened and put the package in the trunk of his car.

Officer Panetta accompanied appellant to the car, which was located at Fourth and E Streets, N. W. Appellant unlocked the trunk, and handed the package of meperidine to the officer, at which time the officer noticed other items in the trunk and questioned appellant about them. Appellant said that it was some of the "stuff" he had taken from Gilpin's. The officer did not remove anything from the car, keeping only what appellant had handed him. They then drove to Gilpin's offices in appellant's car. In the presence of two associates of the firm appellant was asked to relate what he had told the officer. Appellant did so, and the package containing the meperidine was dated, initialed, and placed in the company

safe. The officer left, and appellant went back to work.

Three days later Panetta obtained an arrest warrant charging appellant with larceny of the drugs and a warrant for the search of his car. He also arranged for appellant to be summoned to his employer's office on his arrival at work. When Panetta arrived at the office about 12:15 appellant was present. He informed appellant that he had a warrant for his arrest for larceny of the drugs and a warrant for the search of his car, and asked him whether the car still contained the packages he had seen on the previous occasion. Appellant said that he had removed them. Panetta then asked for the car keys, and while another officer remained with appellant, he searched the car. Finding a package containing 100 tablets of biphetamine, Panetta returned to the office and questioned appellant about it. Appellant said that it had been taken from the first floor back room; that it was no problem to go back there and pick up a few drugs; that at times he had taken tooth paste, shaving cream and other toilet goods; that on one occasion he had delivered these to a local druggist and had been paid ten dollars; and finally, that it was a common practice for some of the drivers to take drugs that had been stolen to these druggists.

At approximately 12:55 appellant was taken to the Narcotics Squad office and booked. He remained there "just long enough to make out the papers" and thereafter was taken to court at approximately 3:00 p. m. An information was filed charging appellant with petit larceny of meperidine, and on August 8 two additional informations were filed, one charging appellant with the unlawful possession of meperidine and the other with the unlawful possession of biphetamine. On August 15 all three cases were certified for nonjury trial. Appellant orally moved to suppress the evidence. In addition to the above evidence it was further stipulated that appellant had no right to have either drug in his possession except in the performance of his

duties as an employee, and that he had no right whatsoever to take them for his personal use. The government rested its case-in-chief on the main issue at the close of the evidence on the motion to suppress. The court denied the motion. The defense rested on the main issue, and after further argument, the trial court ruled the evidence sufficient "to convince the Court, without anything else, beyond a reasonable doubt that the defendant is guilty" of all three charges.

Of initial concern is appellant's arrest: was he arrested on the first or second day he was questioned by the police, or on the third day when the warrants for his arrest and the search of his car were executed?

■ We are of the opinion that appellant was not under arrest on July 13, the day he was first informed that an investigation was being conducted. At most, he was questioned for five minutes in his employer's presence, no charge was placed against him, and he was not taken into custody. Appellant voluntarily went to police headquarters for the sole purpose of taking the polygraph test, and while there he was not subjected to further questioning. When it was learned that the test could not be given immediately, Officer Panetta suggested that appellant return the following morning. We think his conduct was proper.

Nor was appellant under arrest the following day when he returned to take the test. During the intervening period he had ample opportunity for reflection, free from police suggestion and scrutiny. Furthermore, the record fails to indicate any police detention subsequent to the completion of the test, for immediately thereafter appellant took Officer Panetta to his car, gave him the package, and then returned to his job. The trial court properly concluded that appellant was not under arrest until the execution of the warrant three days later.

■ But was appellant's cooperation prior to his arrest voluntary, or, as appellant

urges, relying on Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954), the result of fear and acquiescence in the face of police authority, which did not constitute an intelligent waiver of his constitutional rights? We are of the opinion that under the circumstances of this case appellant voluntarily cooperated with the police during the period of investigation prior to his arrest. In Higgins, the police asked the defendant if they could talk to him. The defendant said that they could and asked them to accompany him to his room. After advising the defendant that they had information that he had been involved in the traffic of narcotics, which he denied, the police asked to look around. The defendant said that they could and that they could look anywhere in the room. The room was searched and contraband was found. Speaking for the court, Judge Edgerton said:

> "* * * If a valid confession precedes a search by police, permission may show true consent to the search. * * * But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered. * * *" (93 U.S.App.D.C. at 341, 209 F.2d at 820.)

However, the case presently before us is clearly distinguishable. Appellant did not deny any involvement in the disappearance of the drugs. On the contrary, he stated that he had failed to mail the package because it had slipped under the seat of the car; that he had become frightened after being questioned by his employer and had placed the package in the trunk of his car; and that he would take Panetta to the car and give him the package. Furthermore, there was no search by Panetta. Appellant opened the trunk of the car and handed the package to him. It was at this point that Panetta saw the other packages and asked about them. Appellant said that they were "stuff" from the Gilpin Company. Appellant and Panetta returned to the Gilpin offices where, in his employer's pres-

ence, appellant repeated what he had related to Panetta. The meperidine was placed in the company safe and appellant went back to work. But the other packages remained in the trunk of appellant's car until they were seized three days later when Panetta returned with a search warrant and a warrant for appellant's arrest. We have, of course, given due consideration to the fact that "non-resistance to the orders or suggestions of the police is not infrequent * * *; true consent, free of fear or pressure is not so readily to be found," Judd v. United States, 89 U.S.App.D.C. 64, 66, 190 F.2d 649, 651 (1951), but appellant did not change his story as a result of any suggestion from Panetta, nor as the result of any interrogation or "grilling" by the police. Immediately following the completion of the test, and for reasons best known to himself, appellant said that he had the package of meperidine and would take Panetta to his car and turn it over to him. The trial court's conclusion that appellant voluntarily cooperated with the police prior to his arrest, and its denial of appellant's motion to suppress were proper under the circumstances of this case and will not be disturbed.

Finally, appellant urges that the testimony of the sole witness, Officer Panetta, was sufficient to raise a reasonable doubt in the mind of the court as to the requisite criminal intent necessary to support the convictions, and that the trial court thus erred in denying appellant's motion for judgment of acquittal.

 The evidence of appellant's criminal intent with regard to the conviction of unlawfully possessing biphetamine was supplied by appellant's admission following the search of his car and the seizure of the biphetamine. Appellant said that he had taken the package containing the biphetamine from the first floor back room of the Gilpin Company, and that it was no problem to go back there and pick up a few drugs. He further stated that on a prior occasion he had sold certain articles taken from the

back room to a druggist, and that this was a common practice among some of the drivers.

 Following his conviction of the three charges contained in the consolidated informations, appellant was sentenced to ninety days for petit larceny, 180 days for the unlawful possession of meperidine, and one year for the unlawful possession of biphetamine. Since the sentences imposed for the conviction of petit larceny and the unlawful possession of meperidine were each less than the sentence imposed for the conviction of the unlawful possession of biphetamine, the validity of which we sustain, we need not consider appellant's assignment of error relating to them. Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Powell v. United States, D.C.Cir., 307 F.2d 396; Gibson v. United States, 106 U.S. App.D.C. 10, 268 F.2d 586 (1959), and cases cited therein; Municipal Court Criminal Rule 7(c).

Affirmed.