**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Jack Royal ELROD and Herbert Clyde**
**Wright, Defendants.**

**Crim. No. 31815.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 6, 1970.

Daniel J. Markey, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff.

John C. Ciolino, New Orleans, La., for defendants.

CASSIBRY, District Judge.

The Government has charged defendants Jack Royal Elrod and Herbert Clyde Wright with robbing a federally insured New Orleans bank on or around July 12, 1969, 18 U.S.C. § 2113(a) (d). Elrod moves to suppress certain evidence obtained by the F.B.I. and the police in the search of a room at the Monteleone Hotel on the night of the alleged robbery. He claims that:

1. The search and seizure was without a warrant.

2. The search and siezure was not conducted incident to a lawful arrest.

3. The search and seizure was conducted without the consent of Elrod and without the lawful consent of any other person competent to give such consent.

The Government concedes that the search was conducted without a warrant and was not carried out incident to a lawful arrest but nevertheless maintains that it was executed pursuant to a lawful "consent to search" given to F.B.I. agents by Wright, a co-tenant with Elrod in the room of the hotel.

The legality of the search is the sole issue.

From the evidentiary hearing conducted before this court on Elrod's motion to suppress the following facts appear:

Wright has a long history of mental illness. He has been treated at the Florida State Hospital at Chattahoochee, Florida, repeatedly, since June 1962. The last commitment was in January 1968 and he was discharged in January 1969 with a diagnosis at that time of chronic undifferentiated schizophrenia. On June 10, 1970 this court committed Wright to the custody of the Attorney General, finding him incompetent to stand trial. In the opinion of Dr. Michael L. Connell, a psychiatrist previously appointed by the court to conduct a psychiatric examination of Wright, he was at that time suffering from schizophrenia, was incompetent, and was "only faultily aware of just what was going on." This examination was conducted approximately eight months after the signing of the "Consent to Search" form, and stated that at the time Wright gave his consent he may or may not have been mentally competent to fully understand the value of the document or the consequence of its execution.

On the night of the robbery, July 12, 1969, F.B.I. Agents received information that a person fitting the general description of an individual who robbed a bank in the City of New Orleans that day was then in a local bar. In response to that information they proceeded to the bar, arriving there approximately 11:00 P.M., where they found Wright drinking. He was immediately taken to the F.B.I. office where he was interrogated by various agents of the F.B.I. regarding his involvement in the robbery. He denied his guilt or any involvement. At approximately 1:00 A.M., July 13, 1969, while in custody, Wright executed the "Consent to Search" form after being advised of certain rights contained in the form. Wright was then taken to the Monteleone Hotel by the agents, who entered room 871 and conducted the search and seizure of the evidence now sought to be suppressed.

When a search has been made, neither pursuant to a search warrant, nor incident to a lawful arrest, but relying on the consent of the one searched, the Government has the burden of proving that the consent was freely and intelligently given. Bumper v. California, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Implicit in the very nature of the term "consent" is the requirement of voluntariness. To be voluntary, the consent must be "unequivocal and specific" and "freely and intelligently given" and the burden of proof is on the prosecution to establish by clear and positive testimony that the consent was so given. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951).

Our courts have held that where a defendant denies his guilt in the crime under investigation but nevertheless acquiesces to a search of his premises, knowing that contraband will be discovered by such a search, a consent allegedly given under such circumstances is not voluntary. Judd v. United States, supra; Higgins v. United States, 93 U.S.App. D.C. 340, 209 F.2d 819 (1954); Channel v. United States, 285 F.2d 217 (9th Cir. 1960); United States v. Shropshire, D.C., et al., 271 F.Supp. 521. I decided the *Shropshire* case, which was very similar to the instant case. I said, "When police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by a denial of guilt, do not show consent." Higgins v. United States, supra.

In Judd v. United States, 190 F.2d 649, 651, fn. 3, the defendant was arrested and denied any knowledge of the

crime under investigation. He was thereafter taken into custody, interrogated and when asked by the police "whether he (Judd) minded us going over to his room and taking a look" Judd stated, "I have nothing to hide, you can go there and see for yourself." Judd then accompanied the officers to his room where a search ensued. The court, in finding that the consent given under these circumstances was not voluntary stated,

> "Conceivably, that is the calm statement of an innocent man; conceivably, again, it is but the false bravado of the small-time criminal. But however it be characterized, it hardly establishes willing agreement that the officers search the household without first procuring a warrant. Comparable statements have been held insufficient where the victim of the search was safely in his home, his place of business or in his automobile. Surely they acquire no more force when procured under the circumstances here present."

In Higgins, supra, although the defendant asserted that he was arrested and his room was searched without permission, the court assumed truthful the officers' testimony that they had simply told him about the information they had about his being involved in narcotics, which he denied, and received permission to search his room, and still held the consent to be involuntary. The court said that "when police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by denial of guilt, do not show consent; at least in the absence of some extraordinary circumstance, such as ignorance that contraband is present" and distinguishing the case from one in which a valid confession precedes consent, continued, "No sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered." In United States v. Page, 9 Cir., 302 F.2d 81 and 83, 84, the court summarized the rules that have been stated in various places on the subject of consent searches.

> "The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent must be unequivocal and specific and freely and intelligently given. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights. Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. The government's burden is greater where consent is claimed to have been given while the defendant is under arrest." (citations omitted)

■ Assuming that Wright was mentally competent at the time of the purported consent, the conditions under which he consented raises a strong presumption that it was involuntary. Although the testimony shows that Wright was friendly and cooperative and that no force or coercion was used, there is no showing of any extraordinary circumstances which would rebut the presumption of coercion implicit in a consent procured under the circumstances of this case.

■■ I also have a reasonable doubt that Wright was mentally competent when he gave his consent to the search. Again, the burden was the government's to show by clear and positive testimony that Wright knew what he was doing when he gave his consent. Admittedly such proof is difficult under any circumstances but the Government simply failed to meet its burden and this fact alone would be sufficient to suppress the evidence. United States v. Page, supra; Judd v. United States, supra.

The motion to suppress evidence is granted.