**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jack Royal ELROD and Herbert Clyde
Wright, Defendants-Appellees.**

No. 30894
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 13, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises v. Citizens Casualty Co. of N. Y., 431 F.2d 409 (5 Cir. 1970), Part I.

**354**

Gerald J. Gallinghouse, U. S. Atty., Daniel J. Markey, Jr., George P. Hand., Jr., Asst. U. S. Attys., New Orleans, La., for plaintiff-appellant.

John C. Ciolino, New Orleans, La., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The issue in this case is whether it was error for the District Court, 318 F.Supp. 524, to grant Appellee Elrod's motion to suppress certain evidence seized during a search of the hotel room occupied by both Elrod and Wright, on the grounds that (i) the Government failed to show that the consent to search given by Wright (in the absence of any consent by Appellee Elrod), was freely given, and (ii) that the Government failed to show by clear and positive testimony that Wright was a person mentally competent to fully understand the nature of the "Consent to Search" form which he had signed, and the consequences of its execution. The Trial Judge properly sustained Elrod's motion to suppress, and on the Government's appeal under 18 U.S.C.A. § 3731, with which there has been substantial compliance, we affirm.

Elrod and Wright are charged with robbery of a federally insured bank[1] in New Orleans, Louisiana, on July 12, 1969. On the night of the robbery of this particular bank F.B.I. agents received information that a person fitting the general description of one of the robbers was present in one of the Quarter's local bars, and that the individual was offering a large sum of money in an attempt to procure the services of a prostitute. In response to this tip several agents left for the bar and subsequently arrived there at approximately 11:00 p. m. They found

Wright "in an adjacent room with a security guard", where Wright was drinking an alcoholic beverage, and talking to the security guard.

Upon request of the agents, but of his own apparent volition, Wright then accompanied the agents to the local New Orleans F.B.I. office where, although not yet arrested—but following full *Miranda* warnings—Wright was subjected to interrogation, the inquiry directed toward his alleged involvement in the bank robbery which they were investigating.

During the interrogation Wright openly denied any guilt in, or connection with, the robbery. At approximately 1:00 a. m., while in this "custody", though still not under arrest, Wright executed a "Consent to Search" form. He did this despite his insistence upon his innocence and ignorance of the robbery, and after he had received the *Miranda* warnings and had been informed what the nature of the investigation was, and what the nature of the search would be.

Thus equipped—not with a search warrant, but with Wright's "Consent to Search" form—and practically led by Wright, the agents proceeded to room 871 of the Monteleone Hotel occupied by both Elrod and Wright.

When they knocked on the door Elrod opened it, but he expressly refused to give the agents permission to enter and to search the room. Nevertheless, under color of the "Consent to Search" form, the agents entered the room and conducted a search, ultimately discovering several suitcases which contained the robbery money. Although these suitcases were locked, Wright supplied the key.

Appellees were arrested, and subsequently they were indicted for the charge in question. See note 1, *supra*. On July 10, 1969, pursuant to Wright's motion, a hearing was held to determine his mental competency to stand trial on this offense. The Trial Judge concluded that Wright was not competent, and he placed Wright in the custody of the Attorney General, who transferred Wright to the medical

[1]. 18 U.S.C.A. § 2113(a) (d).

center for federal prisoners in Springfield, Missouri where he is today.

Following this development Appellee Elrod moved to suppress the fruits of the warrantless search of Appellees' hotel room on the night of July 12, 1969. The District Court, in a written opinion, United States v. Elrod and Wright, E.D.La., 1970, 318 F.Supp. 524, made the following findings of fact: (i) Wright had a long history of mental illness, having been treated repeatedly at the Florida State mental hospital at Chattahoochee, Florida, since June, 1962. (ii) Wright had been dismissed from the state mental hospital in January, 1969 with a diagnosis of chronic undifferentiated schizophrenia. (iii) On June 10, 1970 Wright had been committed to the custody of the Attorney General, because he had been found incompetent to stand trial, (iv) this decision having been made upon the diagnosis of Dr. Connell, a Court-appointed psychiatrist, who had found Wright to be (a) suffering from schizophrenia, (b) to have been incompetent at the time he was supposed to stand trial, and (c) to be "only faultily aware of just what was going on." (v) That this examination was conducted approximately eight months after Wright's signing of the "Consent to Search" form, and (vi) that at the time Wright signed it and gave his consent he may or may not have been mentally competent to fully understand the value of the document or the consequence of its execution. It is from this decision that the Government has appealed.

We believe that the two bases relied upon by the Court in its suppression of the evidence—failure of the Government to prove that Wright's consent was freely and voluntarily given, and failure of the Government to prove Wright's mental competency to give the consent—are so inextricably intertwined as to require us to treat them together.

 Here the "Government concedes that the search was conducted without a warrant and was not incident to the arrest of either defendant[2] * * *." When a search had been conducted neither pursuant to a warrant nor incident to a lawful arrest, but was grounded merely upon consent, the burden of justification of the search—that is, that the consent was freely and voluntarily given—falls squarely upon the prosecution. Bumper v. North Carolina, 1968, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. Where a substantial showing is made raising doubts of the consenter's mental capacity, a determination of the question of free and voluntary consent requires a determination that the person was mentally competent to understand the nature of his act *when he signed* the "Consent to Search" form and accompanied the officers to the hotel room. This naturally entails an understanding of the nature of the consequences of his act.

 While it is established that one can validly consent to a search, even though the consent be given while that person is in custody, United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, whether such consent has been given is, in the first instance, a question of fact for the Trial Court, United States v. Page, 9 Cir., 1962, 302 F.2d 81.

 The Government contends that there is "no evidence that Herbert Wright was insane at the time he consented to the search * * *." At the outset this is wrapped up in the conclusory enigma of "insane" with its many meanings including, as perhaps suggested here, that of a bumbling idiot. The question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had a reasonable appreciation of the nature and significance of his actions. In that light we reject this contention, as we find the record to contain sufficient evidence for the Trial Court reasonably to have reached the conclusion that Wright was mentally incompetent at the time that he signed the consent form.

---

2. Government's brief at page 2.

The Government also contends that "even if the Court were to find that Wright was so deranged at the time of the search that he could not have given his consent voluntarily * * * the search ought not be held unlawful for that reason alone." This is a curious claim since in effect the Government is seeking warrantless searches through "consent" given by one who does not know what he is doing. Presumably it is a lamentation that to the burdens which now almost make a constitutional seer out of a policeman on the beat will be added the esoteric functions of an amateur psychiatrist. No matter how genuine the belief of the officers is that the consenter is apparently of sound mind and deliberately acting, the search depending on his consent fails if it is judicially determined that he lacked mental capacity. It is not that the actions of the officers were imprudent or unfounded. It is that the key to validity—consent—is lacking for want of mental capacity, no matter how much concealed. "The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a Government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." Mapp v. Ohio, 1961, 367 U.S. 643, 659, 81 S.Ct. 1684, 1694, 6 L.Ed. 1081, 1092.

While it is true that the Judge expressed it as not being able to find whether or not Wright had the requisite mental capacity, this is of no aid to the Government. Consent means knowing approval. The Government had to show this to sustain validity. On this record it would fail in this burden either by a finding of incompetency or one of equilibrium.

This was essentially a fact question and we are unable to hold that the District Court's fact findings are without foundation or that the Government has sustained its burden of showing a consent by one who was mentally competent.[3]

Affirmed.

---

3. We sound this caveat: Nothing done or not done, said or unsaid in this affirmance is even remotely a possible suggestion of a whisper of an intimation that we would approve or follow Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649; Higgins v. United States, 1954, 93 U.S. App.D.C. 340, 209 F.2d 819; Channel v. United States, 9 Cir., 1960, 285 F.2d 217; United States v. Page, 9 Cir., 1962, 302 F.2d 81, cited in United States v. Shropshire, E.D.La., 1967, 271 F.Supp. 521; United States v. Poole, E.D.La., 1969, 307 F.Supp. 1185; United States v. Elrod and Wright, supra, insofar as they are an attempt by Judges to psychoanalyze the mental, emotional, or psychological responses and actions of those ostensibly agreeing to a search, or as they speak in terms of such responses or characterize them in terms of law. We will face that when the time comes.