UNITED STATES of America,
Plaintiff-Appellee,

v.

David HAYWARD, Defendant-Appellant.

No. 71–1933.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1972.

Decided Dec. 1, 1972.

Edward M. Genson, Sam Adam, Arnette R. Hubbard, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and KILKENNY,* Senior Circuit Judge.

SPRECHER, Circuit Judge.

Defendant was convicted in a bench trial of the offense of knowingly possessing goods stolen from interstate commerce in violation of 18 U.S.C. § 659. He was sentenced to a term of 177 days. Two issues are raised in this appeal: (1) whether the trial court erred in admitting into evidence certain mini-bikes seized during a search of defendant's premises; and (2) whether the trial

* Senior Circuit Judge John F. Kilkenny of the Ninth Circuit, sitting by designation.

court in sentencing the defendant improperly took cognizance of Hayward's refusal to divulge the source from which he acquired the stolen bikes.

 Defendant argues that items seized from his garage should have been suppressed because the police officer who made the search had no warrant and any consent was the product of "police coercion and overreaching." The record indicates that the trial judge had ample evidence from which to ·conclude that defendant consented to the search and that this consent was given freely and voluntarily.

On May 6, 1971, Officer William Schaeffer received information that some mini-bikes, possibly stolen, were being sold at defendant's address. Upon further check, Schaeffer found that two hundred fifty mini-bikes had been stolen; he obtained a list of their serial numbers and a description of the distinct features of the bikes. Later that afternoon, while on patrol, Schaeffer received a radio dispatch indicating that a bike fitting the description of the stolen bikes was being loaded into a Ford automobile parked in defendant's driveway. Schaeffer drove to Hayward's address, observed a set of handle bars protruding above the back seat of a Ford car parked in the driveway, and noticed defendant standing by his side door. As Schaeffer began walking up the driveway, Hayward, who knew Schaeffer well enough to address him by his first name, walked up to him and asked what he could do for him. Schaeffer responded that he had been informed that stolen property was being sold at that address. At this time Schaeffer looked in the parked Ford car and observed a mini-bike fitting the description he had been given. He then asked Hayward if he might look in his garage. Defendant asked whether Schaeffer had a search warrant. Schaeffer did not.

At this point the evidence is somewhat conflicting, but accepting the defendant's version as true, the following occurred:

"Q. And what did he say?

"A. He said. 'I will ask you once more; can I look in your garage'?

"Q. And what did you say?

"A. I said. 'Okay'. I said, 'I can't stop you'."

Thus, on defendant's own admission, consent to the search was given.

In attempting to show that this consent was the product of coercion, defendant places primary reliance on two cases, United States v. Arrington, 215 F.2d 630 (7th Cir. 1954), and Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954). In *Arrington*, the court held that evidence found in a search of the defendant's home should have been suppressed because police officers had entered the defendant's home at four o'clock in the morning, without a warrant, taken him into custody without charge or even an accusation, and later told the·defendant, who was then at police headquarters, that they knew what was in his house and then commanded, "Come on, we are going to search your house". 215 F.2d at 635. Under the circumstances, the court was surely correct in concluding that any subsequent consent to a search was the product of sustained coercion and "tainted with illegality from the beginning to the end." *Id.* at 636. In *Higgins*, there was a dispute as to whether consent to search for marijuana had been given. The court of appeals concluded that no voluntary consent could be found, stating: "But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered." 209 F.2d at 820. The present case differs from *Higgins* in that consent was clearly given. We therefore need not decide whether in a disputed case we would agree with the language just quoted. *Cf.,* United States v. Young, 471 F.2d 618 (7th Cir. 1972).

The defendant does not offer any evidence which might indicate that his consent was the product of overreaching. He merely insists that his consent could not have been voluntary since "no sane man" would have voluntarily given con-

sent under the circumstances. He further argues that his request for a search warrant indicated that he doubted the officer's authority and the subsequent acquiescence must necessarily have been coerced. On the contrary, we believe his request for a warrant indicates at least some knowledge that he did not have to permit the search. Furthermore, it is extremely unlikely that the defendant would have been overly intimidated by the approach of a police officer with whom he was on a first-name basis. We conclude that Hayward's consent to a search of his garage was given freely and voluntarily.

■ Defendant also argues that, regardless of a voluntary consent, no search could be made without warning of his rights under the Fourth Amendment. Defendant relies on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This argument was rejected in United States v. Young, *supra*, 471 F.2d at 618. We need not reconsider it here.

■ The second issue raised in this appeal relates to the defendant's sentence. After the defendant had been found guilty he was taken before Judge Austin for sentencing. Counsel for defendant argued that Hayward was a proper "candidate for probation." Judge Austin, after considering the request, refused because defendant would not reveal the source of the stolen mini-bikes. Defendant insists that this was error and attempts to bring himself within the holding of those cases in which appellate courts have intervened in the sentencing procedure where the trial judge has exacted a price for exercising the right to stand trial or refusing to admit guilt and show repentance following an adjudication of guilt. *See* Scott v. United States, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969); Thomas v. United States, 368

F.2d 941 (5th Cir. 1966); United States v. Wiley, 267 F.2d 453 (7th Cir. 1959). The trouble with this argument is that it fails to take into account either the purpose of the trial judge's inquiry or the discretionary nature of the probation act.

The trial court in this case did not attempt to coerce the defendant into admitting guilt. The defendant had stipulated at trial that the mini-bikes were stolen and that seven of them had been found in his garage. The only real issue in the trial was whether the search and seizure of the bikes was proper. The trial court would thus have had little satisfaction in seeking a post-trial admission of facts which had been little contested.[1] On the other hand, information concerning the actual theft of the bikes would have been most helpful to the government in its attempt to bring the thief to justice and prevent further interstate thefts. In giving the government the name of the person from whom he received the bikes, defendant would not have been admitting knowledge of a theft or of anyone responsible for a theft.

Neither did the trial judge punish the defendant for choosing to remain silent by giving him a harsher sentence. Authority to grant probation is provided by 18 U.S.C. § 3651, which states:

"Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best."

[1] In sharp contrast to the situation here, insofar as it might affect a trial judge who is concerned with congested trial calendars or is unable to repress feelings of personal antagonism toward defendants who steadfastly maintain innocence in the face of overwhelming evidence of guilt, is the situation presented in United States v. Lehman, 468 F.2d 93, 109, n. 17 (7th Cir. 1972). *See also* Thomas v. United States, *supra*.

In Burns v. United States, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932), the Supreme Court interpreted the purpose and requirements of the Probation Act as follows:

"It was designed to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. . . . Probation is thus conferred as a privilege, and cannot be demanded as a right. It is a matter of favor, not of contract. There is no requirement that it must be granted on a specified showing. The defendant stands convicted; he faces punishment, and cannot insist on terms or strike a bargain. To accomplish the purpose of the statute, an exceptional degree of flexibility in administration is essential. It is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion."

Discretion is of course not unlimited. A convicted defendant is at least entitled to have the trial judge consider his application for probation. *See* United States v. Wiley, 267 F.2d 453 (7th Cir. 1959), and 278 F.2d 500 (7th Cir. 1960). A trial judge's discretion is, however, wide. The Act states that he *may* grant probation "when satisfied that the ends of justice and the best interest of the public as well as of the defendant will be served thereby . . ". We cannot say that a refusal to grant probation to a defendant who, for whatever reasons, declines to cooperate with the government in apprehending other offenders is an abuse of discretion. *See* United States v. Vermeulen, 436 F.2d 72, 74 (2d Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971).

The sentence given the defendant in this case was only 177 days. The maximum penalty for the offense committed is ten years in prison and a $5000 fine. 18 U.S.C. § 659. The sentence received was hardly, therefore, unduly harsh and, as in United States v. Lehman, *supra*, 468 F.2d at 111, "belies the contention that [Hayward] was improperly punished." *See also* United States v. Chaidez-Castro, 430 F.2d 766, 770 (7th Cir. 1970).

The judgment is affirmed.

Affirmed.