**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bruno Anthony PIET and Delmar L. Markham, Defendants-Appellants.**

**Nos. 73-2137, 73-2138.**

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1974.

Decided May 20, 1974.

Rehearing Denied July 18, 1974.

James D. O'Connell, Highland Park, Mich., Thomas H. Ramsey, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., Walter Jones, Jr., Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and SPRECHER, Circuit Judge.

CASTLE, Circuit Judge.

Defendants Bruno Piet and Delmar Markham appeal their jury convictions on one count of unlawfully possessing goods stolen from interstate commerce, a violation of 18 U.S.C. § 659.[1] On appeal, Piet and Markham assert that the indictment was insufficient to state an offense, that the evidence was insufficient to prove that Piet possessed stolen goods, that the district court erroneously denied a motion to suppress the stolen goods from evidence, and that the government permitted a key witness to perjure himself in denying the existence of a plea bargain. We have considered these issues, and we affirm the convictions.

On March 19, 1973, Russell Johnson, a truck driver, while making a delivery to the Chippewa-McClain Motor Freight Co. of Bedford Park, Illinois, agreed to receive some Black and Decker lawn edgers from Bruno Piet, a Chippewa dock hand; the two men agreed to split the proceeds from Johnson's planned sale of the edgers. Later, Johnson telephoned Delmar Markham to inquire whether he could "use" the edgers, and Markham directed Johnson to transport them to the Able warehouse. The men

---

1. The appeals of Piet, No. 73-2137, and Markham, No. 73-2138, were consolidated for purposes of oral argument and this opinion.

fixed the sale terms, and subsequently, Johnson found $124 at the location where he had asked Markham to deliver payment. One March 21, Markham telephoned Frank Smith, acting warehouse foreman, and requested that one-half of the edgers be separated; Markham picked up these edgers later that afternoon.

■ Piet claims that the indictment was insufficient to state an offense because it specified the precise location of the theft, rather than any particular facility enumerated in the statute. This court rejected a similar contention in United States v. D'Antonio, 342 F.2d 667 (7th Cir. 1965), in finding that "a dock of Day's Transfer Co.," referred to facilities set forth in the statute. Similarly, "Chippewa-McClain Motor Freight Company, Bedford Park, Illinois" connotes such statutory terms as "platform or depot," "station" and "storage facility." United States v. Knight, 451 F.2d 275 (5th Cir. 1971), cert. den., 405 U.S. 965, 92 S.Ct. 1171, 31 L.Ed.2d 240 (1972), a case indistinguishable from ours, found that an indictment specifying "Yellow Freight System terminal" was sufficient because there was no significant distinction between the words of the indictment and those of the statute. *Accord,* Dunson v. United States, 404 F.2d 447 (9th Cir. 1968), cert. den., 393 U.S. 1111, 89 S.Ct. 925, 21 L.Ed.2d 808 (1969). United States v. Manuszak, 234 F.2d 421 (3rd Cir. 1956), on which the defendants rely, is inapposite, for the indictment there failed to specify *any* specific facility or place from which the goods had been stolen. We find that the indictment sufficiently apprised the defendants of the nature of the crime with which they were charged. *See,* Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

■■ Piet also argues that his indictment represents an unwarranted extension of federal jurisdiction beyond the scope of congressional intent in drafting the statute. We cannot agree. "The language of section 659 evidences a clear purpose to reach depredations affecting any conceivable instrumentality by which the interstate transportation of freight may be accomplished." Dunson v. United States, *supra,* at 448. That Congress is empowered to protect interstate commerce by proscribing possession of goods stolen from interstate shipment is beyond cavil, see, Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L. Ed. 122 (1942); whether such power was wisely exercised through the enactment of section 659 is clearly improperly addressed to this branch of government.

■ Piet next contends that the evidence was insufficient to establish that he was in actual possession of the lawn edgers; therefore the court improperly denied his motion for a judgment of acquittal. Viewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find there was sufficient evidence for the jury to determine that Piet had possession of the edgers, as charged in the indictment. After determining on March 19, 1973 that Johnson would accept any merchandise which Piet might be able to supply to him, Piet learned from a coworker that a load of Black and Decker lawn edgers, marked "Richmond freight," was lying on the dock. Piet then told Johnson that he would try to load the edgers on the back of Johnson's trailer. Thereafter, Piet was seen loading the lawn edgers into a truck. From this evidence, the jury could properly infer that Piet had established the requisite dominion and control over the property at issue. *Accord,* United States v. Parent, 484 F.2d 726 (7th Cir. 1973); United States v. Catalano, 450 F.2d 985 (7th Cir. 1971), cert. den., 405 U.S. 928, 92 S.Ct. 980, 30 L.Ed.2d 802 (1972). The case is therefore distinguishable from United States v. Nitti, 444 F.2d 1056 (7th Cir. 1971), where the court expressly noted that the defendant had no knowledge of the stolen property.

■ Markham contends that his motion to suppress the lawn edgers from

evidence was erroneously denied because (1) the March 23, 1973 FBI inspection of the Able warehouse storage room in which Markham's goods were kept was unlawful, (2) that inspection tainted the March 26, 1973 search and seizure of Markham's goods stored at the warehouse, and (3) Markham's consent to the March 26 search was improperly induced. Respecting the first point, Markham asserts that Frank Smith lacked the authority to permit FBI agents to inspect a storage room at the warehouse in which Markham's goods were commingled with those of others who leased space at the facility. In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, 42 USLW 4252 (1974), the Supreme Court reiterated that permission to search may be obtained from a third party who possessed either common authority over or other sufficient relationship to the premises or effects. "The authority which justifies third-party consent does not rest upon the law of property . . . [but rather] on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 4254 n. 7, 94 S.Ct. 993. Frank Smith introduced himself as the warehouse foreman and stated that he was in charge in the owner's absence. Smith also told the FBI agents that he had one of two keys to the common storage area where Markham's goods were kept and that Markham did not have a key to the facility. Smith freely consented to the FBI search, and he led the agents to the area where Markham's goods were stored. From the labels on the Black and Decker cartons, the agents ascertained that the boxes contained the stolen lawn edgers. The agents then left the warehouse. Whatever Smith's position, it is clear that Markham was aware, as a practical matter, that Smith and the warehouse owner—who possessed the only keys to the common storage room—had access and control over the common area. We find, therefore, that Markham had no reasonable expectation of privacy respecting the storage of his goods, *see,* United States v. Eldridge, 302 F.2d 463 (4th Cir. 1962), and assumed the risk that the persons in charge of the facility might willingly and voluntarily grant permission for agents to enter and search the common storage area. *See,* United States v. Matlock, *supra*; Von Eichelberger v. United States, 252 F.2d 184 (9th Cir. 1958).

 Markham further argues that as the March 26 search and seizure resulted from information gleaned from the allegedly unlawful March 23 search, evidence seized on March 26 must therefore be suppressed. Even if the March 23 search had been unlawful, that investigation would not have tainted the March 26 search and seizure of the edgers. Prior to the March 23 search, Johnson told FBI agents that Markham had directed him to deliver the stolen edgers to the Able warehouse. Thus, an independent basis existed to support the agents' suspicion that Markham was storing stolen goods at the Able facility. *Cf.,* United States v. San Martin, 469 F. 2d 5, 8 (2d Cir. 1972), cert. den., 410 U. S. 934, 93 S.Ct. 1388, 35 L.Ed.2d 598 (1973).

 Markham's claim that he was improperly induced to consent to the March 26 search is apparently grounded on his assertions that the FBI agents told him that it would be futile to withhold consent to the search since the agents had already determined that the stolen merchandise was there and that it was unnecessary for Markham to call his attorney prior to granting consent. The FBI agents involved denied the first assertion and contended that they told Markham that he was free to call his attorney at which point he changed his mind. First, issues of credibility of witnesses are to be resolved by the trial court, which may observe the witnesses' demeanor at first hand; such issues may not be relitigated at the appellate level. Second, even if the trial court had accepted Markham's account, "the totality of all the circumstances" does not indicate that Markham's consent was involuntary. *See,* Schneckloth v. Busta-

monte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Markham had previously been informed that he was a suspect in the case, and he had received his *Miranda* warnings. He voluntarily accompanied the agents to the warehouse. Most significantly, he was advised that he could refuse to consent to the search, yet he decided to execute the consent form. Even if the FBI agents had advised Markham that it was not necessary for him to consult with a lawyer in order to give his consent to the search and that the agents had already determined that he was storing stolen goods at the warehouse, these factually true statements do not evidence duress, coercion, chicanery or threats—factors which courts have traditionally examined to determine whether consent was freely and voluntarily granted. Moreover, we reject any suggestion in Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954), that one claiming innocence cannot voluntarily consent to a search when he knows that that which is sought is certain to be found.[2] Rather, we agree with the First Circuit that "the pressure exerted on a criminal by the realization that the jig is up is far different from the deliberate or ignorant violation of a personal right that renders apparent consent ineffective." Gorman v. United States, 380 F.2d 158, 165 (1st Cir. 1967). Marham may well have believed that the seizure of the stolen goods was inevitable or that cooperation with the FBI would serve his interests. *See,* Leavitt v. Howard, 462 F.2d 992 (1st Cir. 1972).

■ Piet and Markham lastly contend that the record discloses evidence of plea bargaining between the government and its key witness, Johnson, despite Johnson's denial under oath, which the government did not contradict. Had there been a promise to the witness prior to his testimony which was withheld from the jury by the witness and the government, Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), would require reversal of the convictions. Moreover, if there is evidence of a plea bargain at some point in time, DeMarco v. United States, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501, (1974), would require remand to the district court to determine through an evidentiary hearing whether the plea bargain occurred prior to the giving of testimony. Unlike *DeMarco,* where the prosecutor's remarks at the sentencing of the witness arguably established that a plea bargain was reached with the witness prior to his giving testimony, there is absolutely nothing in the record of the present case to even suggest that a plea bargain was reached between Johnson and the government. While steadfastly denying the existence of a plea bargain both at his own arraignment and at the trial of Piet and Markham, Johnson expressed his hope that the court would favorably consider his cooperation with the government in subsequently sentencing him. The mere expression of one's hopeful (and not unreasonable) expectation cannot be equated with concrete indicia of an undisclosed plea bargain. Without any substantive claim that a plea bargain was struck, there would clearly be no basis for ordering an evidentiary hearing to determine the date of such an alleged agreement.

The judgment of the district court is affirmed.

Affirmed.

2. This qusetion had been expressly left open in United States v. Hayward, 471 F.2d 388, 389 (7th Cir. 1972).