JOHN HENRY PERNELL, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—475 S.W.2d 204.

August 6, 1971.

Certiorari Denied by Supreme Court December 20, 1971.

666

Fred M. Milligan and Don Moore, Jr., Chattanooga, for plaintiff in error.

David M. Pack, Attorney General, Lance D. Evans, Assistant Attorney General, Nashville, Gary D. Gerbitz,

Assistant District Attorney General, Chattanooga, for defendant in error.

DWYER, J. In his retrial after remand from an earlier conviction of murder in the first degree, John Henry Pernell was found guilty of murder in the second degree with resulting punishment and judgment pronounced thereon of confinement for not more than ten years. The original conviction was set aside by this court in an opinion styled John Henry Pernell v. State, released September 4, 1969, at Knoxville.

There are several assignments relating to the sufficiency of the evidence. In evaluating these assignments we quote from the language found in Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107:

"The verdict of the jury, when approved by the Trial Judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence."

It is also not necessary for the court to evaluate the pros and cons of the different witnesses and their testimony in our arriving at our determination. See Hargrove v. State, 199 Tenn. 25, 281 S.W.2d 692.

A fair, unbiased reading of this record not only convinces us that there is a sufficiency of the evidence to sustain the verdict but also conveys to us that the jury

showed a high degree of compassion for this defendant in arriving at the punishment they imposed. This record is replete with threats made prior to this slaying by the defendant that he was going to kill his wife. The record portrays a relationship of turmoil that existed in a less than three-year marriage which was solely one elongated argument interrupted only by numerous separations which could in substance be attributed to the drinking habits of this defendant. On the fatal evening, May 19, 1967, the deceased and defendant arrived at their apartment in Chattanooga. Shortly thereafter the landlady heard a muted voice and the word "kill", followed by shots coming from the defendant's apartment. She fled into the yard, ventured back and the defendant told her that his wife was having a "mad fit" but that she had settled down and gone to sleep. The next day he fled and the body of his wife was found with five pistol wounds on her person, two of such gravity as to cause death, another wound in the shoulder and graze-type wounds about the arm. The defendant at the trial told a preposterous story that his wife got the pistol and threatened him. He snapped a towel he had in his hand and somehow snared the gun and in the struggle it went off, inflicting the wounds. The use of a deadly weapon resulting in death raises a presumption of malice sufficient to sustain a verdict of murder in the second degree unless it is rebutted by other facts and circumstances. See Nance v. State, 210 Tenn. 328, 358 S.W.2d 327. The jury, as we view it, was thoroughly justified in finding that the defendant acted with malice aforethought in the shooting which brought about the death of his wife. We are satisfied that from the prior threats made that the jury could have inferred premeditation from this record. We are

satisfied that counsels' efforts kept the jury from inflicting the more severe penalty. The assignments pertaining to the evidence are overruled.

■ The defendant next contends that the spectators' "oh's and ah's" during the defendant's testimony attacked his credibility and the court erred in not admonishing the jury to disregard same. The bill of exceptions does not reflect these events but does relate counsel asked the court about voices going on in the court. The court promptly instructed that quiet should prevail. We find no merit in this unbriefed assignment. It is overruled.

The defendant next contends he was denied a speedy trial and bottoms this assertion on the fact that defendant has been in jail since July 7, 1967, and that the trial court, following remand on September 4, 1969, had procrastinated until July 14, 1970. In the American Bar Association Project on Minimum Standards for Criminal Justice Standards Relating to Speedy Trial Section 2.2(c), pp. 16, 17, the following language may be found:

"When time commences to run.

\*    \*    \*    \*    \*    \*

"(c) if the defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, from the date of the mistrial, order granting a new trial, *or remand.*" (Emphasis added.)

The defendant contends that the ten-month delay before the second trial was unreasonable. He does not show

any prejudice other than incarceration by the delay. The speedy trial question was raised for the first time on June 26, 1970, and overruled on the date of trial. In King v. State, Tenn.Cr.App., 432 S.W.2d 490, 491, quoting from Wharton's Criminal Law and Procedure, the following language may be found:

"(I)t is generally held that the defendant is not entitled to a discharge for delay in bringing him to trial unless he resisted postponement, demanded a trial, or made some effort to procure a speedier trial than the state accorded him."

■ The trial court in overruling the motion, we note, stated that the court was always ready to give the defendant a trial. He also observed that the matter was continued because of various motions and pleadings filed on behalf of defendant. Under the facts and circumstances in this record the defendant has not been denied, as we view it, a speedy trial. The assignment is overruled.

■ He lastly contends that the trial court erred in allowing the bill of exceptions to be filed without counsel approving same. In short, counsel, after arguing the motion for a new trial, asked to be relieved. The motion was granted by the trial court and it appears the basis for that was the time spent on this case by court-appointed counsel, having represented accused in the prior trial and appeal. The defendant in the interim requested counsel and it was denied with no reason advanced by the trial court. The court reappointed trial counsel to represent the accused on his appeal. We are satisfied that the action taken by the trial court was contrary to the

mandates found in T.C.A. 40-2018 and 40-2020. Nevertheless, the bill of exceptions was timely filed and trial counsel perfected this appeal. Hence, we can find no deprivation which would invoke "State action." We hold that the action of the trial court in relieving counsel and not appointing counsel to be harmless. T.C.A. 27-117.

The judgment of the trial court is affirmed.

We commend court-appointed counsel for competently and capably representing this accused through two trials and two appeals without much reward except to know they earned a "well-done" from this court.

Galbreath and Mitchell, JJ., concur.