Roy VAUGHN and Gable Barnes, Plaintiffs in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Oct. 12, 1971.

Certiorari Denied by Supreme Court Feb. 7, 1972.

Parker, Wilkinson & Montgomery, Birmingham, Ala., for Vaughn.

Charles R. Crowder, Birmingham, Ala., for Barnes.

Bigham & Binkley, Lewisburg, for Vaughn & Barnes.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Frederick B. Hunt, Jr., Shelbyville, for defendant in error.

## OPINION

DWYER, Judge.

Roy Vaughn appeals from his conviction, with judgment pronounced thereon, of possessing a narcotic drug in violation of T. C.A. § 52–1303 with resulting confinement of not more than five years.

Gable Barnes appeals from a similar conviction and judgment with resulting punishment of confinement for not more than two years. The disparity in punishment is accounted for by the fact that Vaughn is a second offender.

At the trial level the two afore-related defendants submitted their cases at a joint trial in which they both, through retained counsel, waived a jury trial. They both submitted to the trial court their defenses, relying on the testimony and evidence presented and preserved in this record on a motion to suppress the evidence uncovered as a result of an illegal search. The defendant Vaughn was convicted of bribery at a jury trial and the evidence used at that trial was also stipulated by all parties as being the evidence upon which the trial judge imposed the judgments of not more than five years to Vaughn and not more than two years to Barnes for violating T. C.A. § 52–1303. The search question was also contested during the trial of Vaughn.

There is a two-pronged attack made by both defendants upon these judgments in their contentions that the judgments imposed are contrary to the law. The contentions of both in substance are that (1) the evidence is insufficient to sustain the

verdict as a matter of law; and (2) the evidence used as a basis for this conviction was secured as a result of a search conducted contrary to constitutional standards. In order to evaluate these contentions we will relate the facts as found by us from our review of the record.

On the early morning hours of August 2, 1969, a Tennessee Highway trooper patrolling Interstate 65 in Marshall County noticed a car that was weaving slightly and smoking heavily from the exhaust. He turned on his authority lights and stopped the car. He found Barnes, who was driving, had no driver's license and placed him under arrest. He then noticed with his flashlight a pistol butt on the back seat. The cylinder, fully loaded, was found when he searched the glove compartment. Vaughn was arrested when he acknowledged ownership of the weapon. The trooper advised he would have to take them to the county jail where they would have to post bond. There then ensued a discussion about bond and being allowed to post it with the trooper. The trooper related the mannerisms of Vaughn made him suspicious and he inquired if he could look in the trunk. The resulting search uncovered fourteen cases of Robitussin A/C. A pint bottle from one of the cases, according to the record, contained 14.6 grains of codeine phosphate per bottle. The record further reflects in a statement taken from Vaughn that he bought fifteen cases of Robitussin A/C in Cincinnati, Ohio, for $2,400, paying $2,000 down, owing $400. The statement further reveals that the Robitussin could be diluted and sold in two and four ounce quantities on a market that would bring anywhere from $5 to $8 for the two to four ounces and $10 to $30 for a full sixteen-ounce bottle.

■ Defendants contend that the State failed to prove the amount of codeine contained in each bottle and that prior to the September 1, 1969, amendment to T.C.A. § 52–1309(2) a person was permitted to purchase and possess a quantity of codeine without a prescription. The jury had before it the bottles (180) with labels, and, as the chemist related, contained 14.6 grains of codeine per bottle. As we view it, this raised a jury question which has been resolved adversely to the defendants. The statement of Vaughn reflects and is proof that the Robitussin was not purchased or possessed as a medicine but for traffic in an illicit market. The assignment is without merit. There is a sufficiency of the proof to sustain the verdict.

■ The pivotal question, as we view this record, is whether the search as conducted was legal. We are satisfied that the search of the trunk and the discovery of the fourteen cases of Robitussin was not connected in any manner with the offense which brought about the initial arrest. In fact, the only basis the officer had for making the search was his suspicion that was aroused by the mannerisms of Vaughn. This is not sufficient. In Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 283–284, 69 L.Ed. 543, the following may be found:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, *that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.*" (emphasis added)

The trooper had no prior knowledge of any other offense having been committed by the defendants, because, as he related, he was looking for anything he could find. In short, he was conducting a condemned exploratory search.

■ The trial court found that the search was a consent search in permitting the evidence (Robitussin) to go to the jury and in overruling the motion to suppress. We are satisfied that a defendant may waive his rights relative to searches and seizures. See Thurman v. State, Tenn.Cr.

App., 455 S.W.2d 177. We disagree with the trial court's findings from our review of the record. We note that the trooper took the keys from the ignition and unlocked the glove compartment. His suspicions being aroused, he then inquired about looking in the trunk. This permission was denied by Vaughn. The trooper then related that he had to look in the car, that he could get a warrant. The defendant Vaughn then related he would let him look but he did not have the key, that Barnes had it. They then proceeded to Barnes when Vaughn then stated he would let him look and stated that he (the trooper) looked like a level-headed person he could do business with. Under the totality of the circumstances we do not believe that the State has met its heavy burden and shown that the defendant Vaughn intelligently consented to this search. The fact that the contraband was known by Vaughn to be in the trunk militates heavily against his validly consenting. See Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819, 820. The very fact that Vaughn refused the trooper's request to search in the first instance is incongruous with validly consenting to the search. His hedging and delaying in producing the key conveys to us acquiescing to authority rather than clear positive words and actions denoting a valid consent. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797.

Under these circumstances, we are satisfied that Vaughn's act of consenting was of necessity and not of his volition. We therefore hold that the search as conducted was contrary to constitutional guarantees. The evidence uncovered was used in bringing about these convictions. The judgments are therefore reversed. The record is remanded. Our disposition of the search assignment resolves the assignment of Vaughn's pertaining to his statement.

RUSSELL, J., concurs.

MITCHELL, Judge (dissenting).

I respectfully dissent in this case.

I am of the opinion that the conviction should be upheld, and agree that the question of the legality of the search is determinative of the issues of this case.

After the arresting officer saw the butt of a pistol in the back seat of the car and after the defendant admitted that it was his car and his pistol the officer according to his testimony then and there placed the defendant under arrest on a charge of "carrying a pistol for the purpose of going armed." I think that the search of the automobile was justified as incident to a lawful arrest and that the officer was authorized to search the automobile and the fact that he found a large quantity of narcotics instead of other pistols does not prevent the admission in evidence of the narcotics found as a result of the search. See Loyd v. State, Tenn.Cr.App., 440 S.W.2d 797; Gerchman v. State, 206 Tenn. 109, 332 S.W.2d 182.

I am of the opinion that the case of Bill Liming v. State, 220 Tenn. 371, 417 S.W.2d 769 is authority for such a search.

In the Liming case, the officer arrested the defendant for driving his automobile in violation of a city ordinance, and when he searched the defendant and his automobile he found a .38 caliber pistol in the glove compartment and on searching the trunk of the car he found a German Luger, both fully loaded.

In an opinion by Mr. Justice Allison B. Humphreys the Court said:

"However, this is not determinative of this issue in defendant's favor. We are of opinion, as was the trial judge, that the search was valid as an incident to a lawful arrest. And the fact the arrest was for a misdemeanor or a violation of a city ordinance does not alter the case.

"Our leading case on arrest is Hughes v. State, 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639. There it is stated:

" 'An officer making an arrest has authority to search the person of his prisoner, even against his will; but a search is justifiable only as an incident to a lawful arrest, and if the arrest is unlawful the search is also unlawful. Thus an officer acting without a warrant for an arrest and without attempting to make an arrest is not justified in making a search of a person upon mere suspicion that he has committed a crime. The officer making an arrest and search of the person of the prisoner may take from him any dangerous weapons, or anything else that he reasonably may deem necessary to his own or the public safety, or for the safe-keeping of the prisoner, and take into his possession the instruments of the crime and such other articles as may be of use as evidence on the trial, or which might enable the prisoner to escape.' 145 Tenn. 566–567, 238 S.W. 588, 594.

\*   \*   \*   \*   \*   \*

"In all of our cases the question of the validity of the incidental search has turned on the common law basis of the right to search in connection with an arrest as stated in Hughes v. State, as that rule has been necessarily explained in its application in particular cases. Always, the inquiry has been whether or not the search could reasonably and fairly be related to one of the common law grounds for search recognized in that case.

"In 79 C.J.S. Searches and Seizures § 68, it is said:

" 'No search warrant is necessary in order to search the vehicle in which a person is riding at the time of his arrest for an offense committed in the presence of the officer, including a felony or a misdemeanor; and such a search is not unreasonable under the constitutional guaranty.'

\*   \*   \*   \*   \*   \*

"The federal aspect of this assignment is foreclosed against the defendant by Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, where the U. S. Supreme Court in discussing this proposition said:

" 'Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (655) (LRA 1915B 834) (1914); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (148) (51 A.L.R. 409) (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, *supra*, 267 U.S. (132,) at 158, 45 S.C. (280,) at 287, 69 L.Ed. 543, (at 553,) and, to an extent depending on the circumstances of the cases, to the place where he is arrested. Agnello v. United States, supra, 269 U.S. at 30, 46 S.Ct. (4,) at 5, 70 L.Ed. 145 (at 148); Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 77, 72 L.Ed. 231 (238) (1927); United States v. Rabinowitz, 339 U.S. 56, 61–62, 70 S.Ct. 430, 433, 94 L.Ed. 653 (657–658) (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.' 376 U.S. 364, 84 S.Ct. 883, 11 L.Ed.2d 780."

It is the contention of the defendant that the officer gained the defendant's consent to the search by coercion.

It is my opinion that if the search was justified as incident to a lawful arrest then the question of consent becomes immaterial.

On the question of coercion I cannot overlook the fact that the defendant Vaughn himself resorted to considerable coercion when he sought to corrupt an honest officer by offering him $500.00 and then $1,000.00 to release him and let him go on his way, as the defendant thought the officer looked like a man he "could do business with."

I would affirm the judgment.