**Kenneth Darrell McGREGOR,
Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Dec. 5, 1972.

Certiorari Denied by Supreme Court
March 5, 1973.

Bobby Lee Cook, Summerville, Ga., J. D. Culvahouse, Decatur, C. T. Ziegler, Athens, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Cleveland, for defendant in error.

## OPINION

DWYER, Judge.

Kenneth Darrell McGregor was convicted on consolidated indictments for committing the offenses of rape, with resulting punishment of confinement for twenty-one years, and kidnapping, with resulting punishment of confinement for not less than two nor more than ten years. The trial judge in pronouncing judgments on the verdicts ordered that the sentences run consecutively. Defendant was represented by retained counsel at the trial and has been declared an indigent for this seasonably perfected appeal.

There have been filed assignments of error pertaining to the sufficiency of the evidence and its compatibility with the law. We will narrate the facts as we have gleaned them from our review of this voluminous record in order to evaluate these assignments.

The events of this case occurred in Meigs County in the vicinity of Decatur in the early afternoon of August 7, 1970. Two young females, Cynthia Kennedy, age 12, and Tamara Perkinson, age 10, were picking up the mail from the mailbox for Cynthia's home. The box was located across Highway 58 which runs in front of her home which sat back some distance from the highway. On their return to the house the defendant drove into the driveway and inquired about the location of some people named Gentry. He then asked the youngsters if their parents were home and they replied in the negative. He then pulled further into the driveway, turned around, and approached them. He got out of the car with a map and then pulled a pistol on the two and ordered them into the car. He placed the ten-year-old in the trunk and the twelve-year-old in the front seat. He drove to a road off the highway and ordered the twelve-year-old out of the car, took a blanket from the trunk, put the pistol in a small black satchel with the name McGregor on it, and took the young girl into a field and raped her. Tamara was left in the trunk. Later he put the satchel and the pistol back in the trunk. He then took the girls back to their grandfather's house, John D. Perkinson, and let them out. The young girls entered the house screaming to the grandfather and complained to him about the rape and kidnapping. They were then taken to the sheriff's office where they described the defendant, described the

automobile as being a late model Mustang, of a funny green color, with Georgia tags, with a stripe down the side, and related that the defendant was armed with a pistol.

An all-points bulletin was put out with this information and resulted in short order in the arrest of the defendant by the highway patrol. Prior to the arrest defendant had been observed driving at a high rate of speed and once was within fifteen miles of the Georgia State line. The officers searched defendant's car and found in the trunk a black satchel which had the defendant's name on it and a pistol within. Defendant contests the legality of this search, a matter which will be dealt with later in this opinion.

From the witness stand the enumerated facts were not denied by the defendant, except that it was his version that the little girls had waved him down and on entering the car the older girl had enticed him and they had intercourse freely and voluntarily. Defendant was twenty years of age at the time. He further testified that he did not place Tamara in the trunk.

■ The State offered witnesses who saw the car parked off the road with no one in the back seat nor around the car. One of Tamara's fingerprints was found on the car trunk. Defendant further related the pistol was his father's and he was keeping it for him, and that it was in the car and Tamara had found it. In the total evidence presented we have diametrically opposed versions of the events. These factual differences between the versions of the parties address themselves exclusively to the jury. They, as evidenced by their verdict, have rejected the version of the defendant. He has the burden here to show that the evidence preponderates against that verdict. See Pernell v. State, Tenn.Cr.App., 475 S.W.2d 204, 205. We note the learned trial judge in overruling the motion for new trial remarked that he could not as thirteenth juror believe the defendant and his version. Our reading of this record convinces us that the evidence was sufficient

and not incompatible with the law. The assignments pertaining to the evidence are overruled.

■ Defendant next contends the court erred in overruling his motion to suppress the evidence of the gun and satchel in that the warrantless search of the car trunk was illegal. Defendant offered no proof at this hearing. The trial court found that the search was legal because the officers had probable cause when conducting the search which discovered the weapon in the satchel in the trunk. We agree. As noted, the arresting officers had received the radio broadcast which reflected: (1) a late model Mustang automobile; (2) a funny green color; (3) with Georgia license plates; (4) operated by a lone, male, white; (5) that he was armed; and (6) that he had committed the offense of rape. The defendant contends the officers exceeded the permissible bounds of the scope of a warrantless search of an automobile. We reject this reasoning. Defendant cites Vaughn v. State, Tenn.Cr.App., 477 S.W.2d 260. We note in that case that the search was in no manner or means connected with the offense for which the arrest was made. The officers here from the related facts had probable cause to search this vehicle without a search warrant under the circumstances found herein, see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, because the officers had probable cause to believe that the weapon, with which the rape suspect was reportedly armed, was located somewhere in the car. They therefore had probable cause to search anywhere in the car for the weapon, which was an instrumentality used in the commission of the crime, under the circumstances of having stopped an armed rape suspect, and we so hold.

■ Further, when the defendant voluntarily took the witness stand at the trial and gave testimony explaining the presence of the weapon and the satchel that were introduced, he cured any illegal search question, because his own words established

the existence of these two articles in his car. See Lester v. State, 216 Tenn. 615, 624, 393 S.W.2d 288. The assignment pertaining to the legality of the search is overruled.

Defendant next assigns generally that he was not tried by an impartial jury, and asserts several related assignments pertaining to the selection of the jury. He reasons first that one of the prospective jurors, in answer to a question by the court, replied that he heard defendant had been in prior trouble. Defendant reasons this poisoned the entire venire who were seated in the courtroom. The trial court in an abundance of caution sequestered the five jurors who had already been selected, and proceeded with individual selection of the jury from that point. The judge interrogated all jurors who had been selected as to whether they had heard the answer and if it would affect them. The court was satisfied from their sworn answers that it would not. The judge further charged the jurors that they were to try the defendant upon the facts and evidence alone. We are satisfied from our many years of trial experience that prospective jurors sometimes inadvertently blurt out answers which surprise and contort the respective attorneys. However, if a mistrial were entered on every such occasion we would have very few completed trials. We are satisfied here that the trial court, who has wide discretion in the selection of juries, was justified in being satisfied that the jury would and did follow his admonitions. The assignment is overruled.

Defendant next assigns, in relation to the preceding assignment, that prospective jurors had discussed this juror's statement in the hall and therefore they could not remove this from their minds so as to be fair jurors. The trial court as related painstakingly interrogated each juror about this. All related it would not influence them. He was satisfied, and so are we. They all related they could and would try defendant only on the facts and evidence presented and base their verdict accordingly. The assignment is overruled.

Again with respect to the impartiality of the jury, the defendant contends that the court erred in charging the jury about the statement of the prospective juror regarding defendant's prior trouble. Defendant reasons that in interrogating the respective jurors about the event, the trial judge further aggravated the situation and therefore more indelibly impressed the jury with the juror's answer, to the detriment of the defendant. We disagree. The trial court noted that to declare a mistrial would in such a small county only more accentuate the event of the trial. We agree. Defendant is entitled to a fair trial, but not to a perfect trial. See Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593. The assignment is overruled.

Defendant further contends the attorney general had remarked before prospective jurors the big rape case is coming up. We find no error here in view of the court's instructions and the answers given by the jurors.

Defendant next assigns that he was prejudiced by being manacled in front of the jury. We note no objection was made by the defendant and there is no proof that any of the prospective jurors saw this. There is no error here.

Defendant next contends the court erred in remarking, in reference to a point argued by the attorney general, that the point was based on reasoning that "if a little bit didn't hurt, a lot wouldn't hurt". There is no merit in this assignment because the jury was not present when the comment was made. The assignment is overruled.

In further regard to the impartiality of the jury, defendant contends that he was tried by a jury in contravention of Article 1, Section 9 of the Tennessee Constitution, in that one of the jurors was a friend of the father of the prosecuting witness in the kidnapping case and thus was not impartial. Defendant bolstered this assertion at the motion for new trial hearing with evi-

dence that the victim's father eight years ago had gone quail hunting with the juror, and that the father four and a half years ago had given a puppy bird dog to the wife of the juror. The voir dire transcript reflects that the juror, in response to the defense question as to whether he knew John D. Perkinson (who was the grandfather of both the female victims), related that he knew of them, had heard of them, but was not acquainted with them (the Perkinsons). Further, it was developed at the hearing that the juror asserted that he had given the defendant a fair and impartial trial.

■■■■ In questions of this type we pay great deference to the ruling of the trial court who heard and saw these witnesses in the forum. The trial judge's action should not be reversed by the reviewing court unless there is manifest error. See Palmer v. State, 121 Tenn. 465, 476, 118 S.W. 1022. The court's denial of the motion for new trial reflects that the evidence at the hearing did not convince the court that the juror was disqualified. See Thomas v. State, 109 Tenn. 684, 687, 75 S.W. 1025. We do not think the defendant has carried the burden here of showing with sufficient evidence that the juror was biased and prejudiced. We are mindful of the teaching found in Hyatt v. State, 221 Tenn. 644, 647, 430 S.W.2d 129, that the jury must be free of even a reasonable suspicion of bias and prejudice. In a small county such as Meigs we would think that delving deep into the past life of all the jurors would reveal many encounters and hunts. The passage of time would naturally fade away remembrances of the encounters and the identities of the parties. We are satisfied here as was the learned trial judge that the juror was not shown to be biased nor prejudiced, by the showing that he had been hunting with the father eight years ago and that the father had given the juror's wife a puppy four and a half years ago. These circumstances are not such close and intimate associations which would disqualify the juror, as condemned in Durham v. State, 182 Tenn. 577, 586, 188 S.W.2d 555. These two circumstances do not suffice to establish the exist-

ence in the mind of the juror of an interest in the outcome of the trial as would be expected of a close friend, as contrasted to an acquaintance, and are not therefore sufficient to overturn the presumption in favor of the valid qualification of this juror and the regularity of the trial. See Thomas v. State, supra.

In closing, we disagree with counsel's assertion that he was disarmed and misled when the juror related he was not acquainted with John D. Perkinson, the grandfather. The voir dire, as related, reflects that the juror reported that he knew of them and had heard of them. This admission was enough to suggest the possibility of some association of the prospective juror with the Perkinsons. The assignment is overruled.

The judgments of the trial court are affirmed.

WALKER, P. J., and O'BRIEN, J., concur.