IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

## STATE OF TENNESSEE v. CHARLES THOMAS LARD, II and DOREEN REBECA GATES LARD

Appeal from the Circuit Court for Tipton County
No. 5224     Joseph H. Walker III, Judge

No. W2006-01941-CCA-R3-CD  - Filed December 5, 2007

The Appellants, Charles Thomas Lard, II, and Doreen Rebeca Gates Lard, each pled guilty in the Tipton County Circuit Court to possession of one-half ounce or more of marijuana with intent to deliver and to the manufacture of one-half ounce or more of marijuana, both Class E felonies. Pursuant to a plea agreement, the Lards reserved the following certified question for consideration by this court on appeal: whether the trial court erred in denying their respective motions to suppress evidence and statements obtained by the police after a search of their home, based upon its finding that the Lards knowingly and voluntarily consented to the search. After thorough consideration of the arguments of the parties and the record on appeal, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

J. Barney Witherington IV, Covington, Tennessee, for the Appellant, Charles Thomas Lard, II. Frank Deslauriers, Covington, Tennessee, for the Appellant, Doreen Rebeca Gates Lard.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Mike Dunavant, District Attorney General; and Walt Freeland, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

In September of 2005, the Tipton County Sheriff's Department received a telephone call from Department of Children's Services ("DCS") worker Edna Kalmon. Kalmon informed Deputy Delashmit and Deputy Mike Rose, with the Narcotics Division, that she had received a referral as to possible child abuse at the home of the Appellants. Specifically, the referral alleged that the child

of the Appellants' daughter, Christine Gates,[1] had suffered a broken leg. During the course of the telephone conversation, the officers advised Kalmon that the Appellants' home had been under surveillance regarding possible drug use. Kalmon informed the officers of her intent to visit the home and investigate, and she asked that an officer accompany her on the visit.

At approximately 3:30 p.m. on September 20, 2005, Kalmon and Rose arrived at the Appellants' home and knocked on the door. Christine Gates opened the door, and Rose immediately noticed the odor of burnt marijuana. Gates invited them into the house, and Kalmon informed her of the purpose of the visit. Rose asked Gates, "Is there marijuana in this house? I can smell it." Gates said, "Yes, sir," and, further, that she had "just smoked a joint about [thirty] minutes ago." Rose indicated that he needed to take a look around and asked Gates if she would sign a consent to search form, to which Gates responded, "Yes, sir, but I can't give you consent to my house. This is my parents' house. I can give you [consent] where I live. I live upstairs in my room." At 3:40 p.m., Gates signed a consent form allowing the officers to search the "[l]iving [a]rea [u]pstairs . . . to include all containers and [l]ocked [b]oxes." During this interaction, another sheriff's deputy, Sergeant Dan Jones, arrived at the scene. The officers proceeded upstairs, and Gates directed them to a closet area containing two or three jars of a green leafy substance that Gates identified to the officers as marijuana. Gates informed the officers that her parents had given her the marijuana. At some point shortly thereafter, Gates's mother, the Appellant Doreen Lard, was contacted by telephone. During this call, she told Rose to "[g]o ahead and search" the rest of the house, but Rose informed her that he would wait until she arrived home from work in Memphis.

Approximately an hour later, the Appellants arrived at the home together. Rose immediately approached them and stated that drugs had been found upstairs. Rose informed them that the officers required consent to search the rest of the house. The Appellants each signed a consent form permitting the officers to search the house, purportedly "[t]o include all outbuildings, vehicles, and locked containers." At the suppression hearing, Rose testified as follows regarding the officers' discoveries throughout the course of the search:

Q. What were [the Appellants] doing while you searched the house?
A. They were very cooperative. They went with me and showed me everything that they had in the house.
Q. Now, when you say "everything," can you describe what you found in the house?
A. I think there was [sic] approximately fifteen fruit jars that were sealed that they said they had grown marijuana for their personal use. And as a matter of fact, they showed me all of the guns, the shotgun, everything.
Q. Where were these fruit jars?
A. In their bedroom, underneath the bed were some of them. There were some bags, loose bags with marijuana, scattered different places in the bedroom.

---

[1] Gates is the daughter of Appellant Doreen Rebeca Gates Lard and the stepdaughter of Appellant Charles Thomas Lard, II.

The shotgun was in the closet. There was a pistol laying on the dresser, like. There was [sic] three or four guns in the house. Then they – after we got through there, they took me to another room where they had some lights and some lines hanging with plants drying. Then they took me outside where some plants were still standing.

The officers advised the Appellants of their rights against self-incrimination, which the Appellants then each waived via written waiver. Both of the Appellants then provided a written statement to the officers.

On November 7, 2005, a Tipton County grand jury indicted the Appellants for possession with intent to deliver one-half ounce or more of marijuana and for the manufacture of more than one-half ounce of marijuana. The Appellants each filed a motion to suppress the evidence seized and statements given to the police. After the trial court held a hearing on August 9, 2006, it denied the motions. On August 10, 2006, the Appellants entered a conditional guilty plea to the indicted offenses, reserving a certified question for appeal. The trial court entered judgments of conviction on August 29, 2006, sentencing the Appellants, as multiple offenders, to three years of supervised probation, with a $2000 fine and service of sixty days in jail. The Appellants timely filed a notice of appeal.

**Analysis**

Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure allows an appeal from a guilty plea in certain cases under very narrow circumstances. An appeal lies from a guilty plea, pursuant to Rule 37(b)(2)(i), if the final order of judgment contains a statement of the dispositive certified question of law reserved by an Appellant, wherein the question is so clearly stated as to identify the scope and the limit of the legal issues reserved. *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The order must also state that the certified question was expressly reserved as part of the plea agreement, that the State and the trial judge consented to the reservation, and that the State and the trial judge are of the opinion that the question is dispositive of the case. *Id*.

The certified issue reserved for this court on appeal was articulated by the trial court in its final order as follows:

whether or not the trial court erred by finding that the evidence seized by law enforcement in this case and the statement given by defendant[s] were properly not suppressed and that said evidence and statement[s] were not obtained as a result of any coercion on the part of law enforcement and the consent to search and statements were voluntarily given by [the Appellants].

On appeal, the Appellants contend that the record in this case indicates a "highly coercive atmosphere at the time of the alleged consent to search" and that their consent was not given voluntarily and intelligently. The Appellants cite *Vaughn v. State*, 477 S.W.2d 260 (Tenn. Crim.

App. 1971), for their argument that "[t]he fact that a defendant consents to a search knowing that contraband lies in the area that will be searched 'militates heavily against his validly consenting.'"[2] The Appellants further assert that coercion is shown by the fact that Rose told them, prior to obtaining consent, that he had already found marijuana in the home, thereby convincing them that their consent was not of their own volition.

"The Fourth Amendment to the Constitution protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S. Ct. 1914, 1916 (1995). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' . . . And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest." *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S. Ct. 2091, 2097 (1984). Article I, section 7 of the Tennessee Constitution provides:

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

*State v. Stephenson*, 195 S.W.3d 574, 592 n.13 (Tenn. 2006). This constitutional provision is identical in intent and purpose with the Fourth Amendment. *Id*. (citing *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

A search or seizure conducted without a warrant is presumed unreasonable, and any evidence discovered as a result of such a search is subject to suppression. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2031 (1971); *State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997). However, the evidence will not be suppressed if the State proves that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting *Yeargan*, 958 S.W.2d at 629). A consent to search is an exception to the normal requirement of a search warrant. *State v.*

---

[2]We acknowledge the language of *Vaughn*, which observed that "the fact that a defendant consents to a search knowing that contraband lies in the area that will be searched 'militates heavily against his validly consenting.'" 477 S.W.2d at 263 (citing *Higgins v. United States*, 209 F.2d 819, 820 (D.C. Cir. 1954)). We would also note that the United States Court of Appeals, Sixth Circuit, in *United States v. Edward Kelly*, 913 F.2d 261, 267 n.3 (6th Cir. 1990), rejected the holding of *Higgins* and observed that "this rule has been overwhelmingly rejected by other courts." *See, e.g., United States v. Mendenhall*, 446 U.S. 544, 559, 100 S. Ct. 1870, 1879 (1980); *United States v. Williams*, 754 F.2d 672, 675-76 (6th Cir. 1985); *United States v. Manchester*, 711 F.2d 458, 462 (1st Cir. 1983); *United States v. Robinson*, 625 F.2d 1211, 1218-19 n. 12 (5th Cir. 1980); *United States v. Ciovacco*, 518 F.2d 29, 29-31 (1st Cir. 1975); *United States v. Piet*, 498 F.2d 178, 182 (7th Cir.), *cert. denied*, 419 U.S. 1069, 95 S. Ct. 655 (1974); *Leavitt v. Howard*, 462 F.2d 992, 997 (1st Cir. 1972).

*Watson*, 227 S.W.3d 622, 644 (Tenn. Crim. App. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S. Ct. 2041, 2059 (1973)). To pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion. *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992).

The sufficiency of consent depends largely upon the facts and circumstances in a particular case. *State v. Jackson*, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993). The determination of whether consent to search was voluntary can only be made by examining the totality of the circumstances surrounding the giving of consent. *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999). The burden is on the prosecution to prove that consent was freely and voluntarily given. *State v. McMahan*, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). When a decision on a motion to suppress is challenged, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). Without such a showing, we must affirm the trial court's decision.

The trial court announced its ruling at the conclusion of the hearing on the Appellants' motions to suppress:

> The Court finds that with regard to the issues raised by [the Appellants] in their motion[s], that the officer was accompanying the children's services about a complaint that they had received, that they were invited into the premises, could smell the odor of an illegal narcotic, which gave them reasonable basis. They were lawfully there, first of all. Secondly, gave them a reasonable basis to investigate further; that Ms. Gates gave a [c]onsent to [s]earch freely; and then [the Appellants] were notified, or a[n Appellant] was notified, and then later [the Appellants] appeared.
>
> The Court finds that there's been no coercion or coercive behavior against [the Appellants] shown in the proof today to require suppression of the [c]onsent to [s]earch.
>
> . . . .
>
> In this particular case they certainly had probable cause to secure a warrant if they had wanted to go get a warrant in the meantime. The officers chose to wait to see if the [Appellants] would consent to search. All the proof I've heard was that [the Appellants] arrived, were cooperative, showed the officers, and maintained that the substances were for their personal use.

Finding no reason to suppress the evidence or statements resulting from the search, the trial court denied the Appellants' motions.

In support of their argument that their consent to search the house was invalid, the Appellants rely on *Vaughn*, a case which involved a warrantless police search of the trunk of the defendants' vehicle during a traffic stop. 477 S.W.2d at 262. In that case, one of the defendants, who was driving the car, was placed under arrest after the police officer discovered that he had no driver's license, and the other defendant was arrested after admitting ownership of a pistol found in the car. *Id*. The police officer subsequently asked for consent to search the trunk of the vehicle, where he discovered a quantity of narcotics. *Id*. On appeal, the defendants argued that the evidence from the trunk should have been suppressed, because it was obtained as a result of an unconstitutional search. *Id*. In reversing the convictions for possession of narcotics, this court discussed the controlling facts and principles as follows:

> The pivotal question, as we view this record, is whether the search as conducted was legal. We are satisfied that the search of the trunk and the discovery of the fourteen cases of Robitussin was not connected in any manner with the offense which brought about the initial arrest. In fact, the only basis the officer had for making the search was his suspicion that was aroused by the mannerisms of [defendant] Vaughn. This is not sufficient. . . .
>
> The trooper had no prior knowledge of any other offense having been committed by the defendants, because, as he related, he was looking for anything he could find. In short, he was conducting a condemned exploratory search.
>
> The trial court found that the search was a consent search in permitting the evidence (Robitussin) to go to the jury and in overruling the motion to suppress. We are satisfied that a defendant may waive his rights relative to searches and seizures. . . . We disagree with the trial court's findings from our review of the record. We note that the trooper took the keys from the ignition and unlocked the glove compartment. His suspicions being aroused, he then inquired about looking into the trunk. This permission was denied by Vaughn. The trooper then related that he had to look in the car, that he could get a warrant. The defendant Vaughn then related he would let him look but he did not have the key, that [defendant] Barnes had it. They then proceeded to Barnes when Vaughn then stated he would let him look and stated that he (the trooper) looked like a level-headed person he could do business with.
>
> Under the totality of the circumstances we do not believe the State has met its heavy burden and shown that the defendant Vaughn intelligently consented to this search. The fact that the contraband was known by Vaughn to be in the trunk militates heavily against his validly consenting. . . . The very fact that Vaughn refused the trooper's request to search in the first instance is incongruous with validly consenting to the search. His hedging and delaying in producing the key conveys to us acquiescing to authority rather than clear positive words and actions denoting a valid consent. . . .

Under these circumstances, we are satisfied that Vaughn's act of consenting was of necessity and not of his volition.

*Id*. at 262-63 (citations omitted).

The Appellant's reliance on *Vaughn* is misplaced. The holding of that case turned on this court's analysis of the totality of circumstances, which indicated that the search of the defendant's vehicle was unrelated to the offense for which arrest was made and that the defendant had initially refused to consent to a search of the vehicle before eventually conceding to the officer's requests. *See id*. The present case is distinguishable in numerous respects. Here, DCS worker Kalmon requested that police officers accompany her to the Appellants' residence after she received a referral alleging child abuse at the address. Once they arrived at the home, Gates invited them inside, and Officer Rose immediately noticed the smell of marijuana. After obtaining Gates' consent to search her room, the validity of which is not at issue, the law enforcement officers discovered contraband, which Gates stated had been given to her by the Appellants. At the suppression hearing, the Appellants failed to establish any basis for concluding that their consent to search the house was a result of their "acquiescing to authority rather than clear positive words and actions denoting a valid consent[,]" as was held to be the situation in *Vaughn*. The proof does not preponderate against the trial court's finding that Rose waited for the Appellants to return home and asked them for consent to search the rest of the house, which we conclude that they provided, without reluctance, in written form, voluntarily and without coercion. We hold that in this case the State carried its burden of establishing that the Appellants' consent to search their home was freely and voluntarily given. Accordingly, the Appellants' assignments of error to the trial court's denial of the motions to suppress are without merit, and the judgments are affirmed.

## CONCLUSION

Based upon the foregoing, the judgments of the Tipton County Circuit Court are affirmed.

_____
DAVID G. HAYES, JUDGE

-7-