UNITED STATES of America, Appellee,

v.

Isaac F. MANCHESTER, III,
Defendant, Appellant.

No. 82–1731.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1983.

Decided July 7, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 18, 1983.

William P. Homans, Jr., Boston, Mass., with whom Anne E. Braudy, and Homans, Hamilton, Dahmen & Marshall, Boston, Mass., were on brief, for defendant, appellant.

John C. Doherty, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BOWNES and BREYER, Circuit Judges, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

The defendant Isaac Manchester appeals the district court's denial of his motion to suppress evidence seized from him as a result of a warrantless search at Logan International Airport. Because we find that the Drug Enforcement Administration (DEA) agents had reasonable and articulable grounds for suspecting that Manchester was involved in criminal activity, we affirm the decision of the district court.

On February 10, 1982, at about 8:50 p.m., defendant Manchester arrived on Flight 326 from Fort Lauderdale, Florida. Manchester deplaned and left the area hurriedly, carrying a small canvas bag. As he departed from the gate area, a Delta attendant asked him "how was your vacation". He said that it was enjoyable, to which the attendant replied "it was certainly a short one, you only left last night." This conversation and the rapidity with which Manchester deplaned attracted the attention of Agent Fencer of the DEA.

Agent Fencer motioned to Agent Lemon, who had been speaking on a telephone, and both men began to follow Manchester. According to Agent Fencer, he had to "trot" to keep up with Manchester. Fencer also testified that Manchester looked over his shoulder several times on his way through the terminal and made a brief stop at a men's room. As Manchester left the terminal, on the walkway to the garage, Agent Fencer called to him "excuse me, sir, would you mind answering a few questions." Manchester turned around and faced the terminal. Agent Fencer identified himself as a DEA agent and began questioning Manchester. Agent Lemon subsequently joined Agent Fencer, identified himself and displayed his credentials. Neither agent touched Manchester, and, according to Agent Fencer, they did not block his way to the garage.[1]

Agent Fencer asked Manchester what flight he had been on. He replied that he had come in from Fort Lauderdale. When asked how long he had been there, he answered truthfully that he had been there one night. Agent Fencer asked to see his plane ticket, which Manchester retrieved from the canvas bag that he had placed on the ground. Both agents examined the ticket, which revealed that Manchester had paid cash for a round-trip ticket between Boston and Fort Lauderdale. Manchester was then asked for some identification, and he produced his driver's license. It was examined briefly and returned.

Agent Fencer explained to Manchester that the airlines were being used to transport drugs and that Fort Lauderdale was a "source city" for cocaine. Manchester replied that he knew that. When asked if he had any drugs, Manchester said no and told the agents that they could look in his bag. Manchester then knelt down and put his hands, which were visibly trembling, into the bag. He began rearranging the bag's contents, claiming that the agents could see that it contained no drugs. Agent Fencer then bent down with Manchester and saw a black cylinder in the bag which he recognized as a cocaine snifter. When asked about the cylinder, Manchester said that it was "something for his head". Upon further questioning, the defendant admitted that the cylinder contained cocaine.

Agent Fencer then removed from the canvas bag a plastic baggie containing marijuana and handed it to Agent Lemon. Manchester attempted to hide a brown paper bag behind his back, but was stopped by Agent Lemon, who removed the bag from the small of his back. The bag contained additional quantities of cocaine. After the agents had seized the paper bag, they placed Manchester under arrest and in-

---

* Of the District of Rhode Island, sitting by designation.

1. Because we find that Manchester was seized as a result of the agents' prolonged interrogation of him, we need not resolve the disputed factual question of whether the agents blocked Manchester's way to the garage.

formed him of his *Miranda* rights. A subsequent search of the canvas bag he was carrying and his person uncovered an additional quarter of a pound of cocaine.

On February 18, 1982, Manchester was indicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1981). Manchester subsequently filed a motion to suppress the evidence seized from him without a warrant at Logan International Airport. This motion was denied. After waiving his right to a jury trial, Manchester was convicted of possession of cocaine with intent to distribute. He appeals the denial of his motion to suppress.

Manchester presents three arguments on this appeal. First, he contends that the encounter with the DEA agents at Logan Airport was a seizure of his person which, under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), was unlawful unless justified by "reasonable suspicion" of criminal activity. This Court has held that a person has been seized for purposes of the Fourth Amendment when a law enforcement officer, by means of physical force or show of authority, has in some way restrained his liberty such that a reasonable person would not feel free to walk away. *United States v. Regan*, 687 F.2d 531, 535 (1st Cir.1982); *United States v. West*, 651 F.2d 71, 72–73 (1st Cir.), *vacated*, —— U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1382 (1981); *United States v. Viegas*, 639 F.2d 42, 44–45 (1st Cir.), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). Applying this standard to the present case, the Court finds that Manchester was seized prior to his consenting to the search of the canvas bag he was carrying.

■ The agents' initial approach and questioning of Manchester was not a seizure within the meaning of the Fourth Amendment. It is well settled that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions [and] by putting questions to him . . . ." *Florida v. Royer*, —— U.S. ——, —— – ——, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). *See Dunaway v. New York*, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1978); *Terry v. Ohio*, 392 U.S. 1, 31–33, 88 S.Ct. 1868, 1885–1886, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); *United States v. Regan, supra*, 687 F.2d at 535. Here, however, the agents went beyond merely asking Manchester some preliminary questions. Even after he had truthfully responded to their questions concerning where he had been and for how long and had identified himself, they continued to detain him and confront him with their suspicions that he was involved in drug trafficking.

We find that the question of whether Manchester's person was seized for purposes of the Fourth Amendment is controlled by our recent decision in *United States v. Berryman*, 706 F.2d 1241 (1st Cir.1983). In *Berryman* we held that:

> the prolongation of the questioning in this case created an atmosphere of restraint prior to the time the suitcase was opened, even if Berryman's freedom to leave was not curtailed by the agents' initial approach. A reasonable person would not feel free to walk away when, after answering truthfully where he had been and for how long, and proffering his airline ticket whose information is confirmed by other identification, he is questioned further and confronted with the suspicion of drug trafficking.

*Id.* at 1246.

As in *Berryman*, the continued interrogation of Manchester, in view of all of the circumstances surrounding the incident, created an atmosphere of restraint in which a reasonable person would not have felt free to leave. Accordingly, we find that Manchester's person was seized for purposes of the Fourth Amendment when the agents continued to detain him after he had truthfully responded to their initial questions and identified himself.

■ The Fourth Amendment forbids only unreasonable seizures. Whether an investigatory seizure is unreasonable "is judged by balancing its intrusion on the

individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). A seizure is justified only where a law enforcement officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. at 1879. *See Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980). In determining whether a seizure is justified, the Court must view the circumstances surrounding the seizure in their entirety and give due weight to the experience of the officers. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Brown v. Texas,* 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979).

This Court has recently considered the constitutionality of various airport encounters between DEA agents and suspected drug couriers. In *United States v. Regan,* 687 F.2d 531 (1st Cir.1982) we found that DEA agents had reasonable and articulable grounds for suspicion where the defendant had paid cash for a one-way ticket, arrived late for the plane, appeared nervous, and continually scanned the airports in an apparent attempt to detect surveillance. *Id.* at 536. Similarly, in *United States v. Viegas,* 639 F.2d 42 (1st Cir.), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981), we held that the facts before the DEA agents justified a brief investigatory stop.

> There was no extended detention, no indication that defendant was in a particular hurry, and no search of his person or (initially) of his belongings. The slight intrusion of this encounter was supported by the pair's evasive actions in the airport, viewed in the light of defendant's arrival from a known distribution center. *Id.* at 45.

Our most recent pronouncement on this subject is *United States v. Berryman,* 706 F.2d 1241 (1st Cir.1983). In *Berryman* we found that the DEA agents did not have reasonable grounds for suspicion even though the defendant had paid cash for his ticket, arrived from a "source city," walked quickly through the airport, glanced over his shoulder once, and claimed that he had been in Florida concerning a land deal in Alaska. *Id.* at 1243. Although Berryman appeared to fit the so-called "drug courier profile," an informal compilation of characteristics believed to be typical of persons carrying narcotics, *see Reid v. Georgia, supra,* 448 U.S. at 440, 100 S.Ct. at 2753, we held that there were no reasonable and articulable grounds for suspecting his involvement in criminal activity. In reaching this conclusion we explained that "the profile is simply a collage of otherwise innocent characteristics designed to guide the focus of the agents' observations, and only when the characteristics are combined in a suspicious manner, or lead the agents to observe independently suspicious conduct, is official intrusion warranted." *United States v. Berryman, supra,* at 1247.

■ In this case, the Court concludes that the agents were confronted with "a series of acts, each of them perhaps innocent in itself, but when taken together warranted further investigation." *Terry v. Ohio, supra,* 392 U.S. at 22, 88 S.Ct. at 1880. Here, as in *Viegas* and *Regan,* the defendant arrived from a "source city" for cocaine and looked over his shoulder several times in an apparent attempt to detect surveillance as he moved quickly through the airport terminal. The DEA agents' attention focused on Manchester when they overheard a conversation between him and a Delta attendant indicating that he had been on a one-day "vacation" in Fort Lauderdale. In this Court's view, the implausibility of a one-day vacation was sufficient to arouse the suspicions of the agents, *see United States v. Jodoin,* 672 F.2d 232, 235 (1st Cir.1982) (17 hour stay in Florida considered suspicious), and when considered in light of Manchester's subsequent rapid and watchful exit through the terminal, gave the agents objective particularized grounds for seizing him. *United States v. Regan, supra,* 687 F.2d at 536; *United States v. Viegas,*

*supra,* 639 F.2d at 45. *See United States v. Berryman, supra,* at 1247 (official intrusion warranted when drug courier profile characteristics are combined in a suspicious manner). Accordingly, we hold that the agents' brief investigatory stop of Manchester did not violate the Fourth Amendment.

██ Manchester's final argument is that the circumstances surrounding his being stopped were so inherently coercive that his consent to search his bag cannot be considered freely and voluntarily given. This argument is without merit. Manchester responded to Agent Fencer's question of whether he had any drugs by saying that they could look in his bag. He further attempted to convince the agents of his innocence by rearranging the contents of his bag. There is simply no evidence that the agents in any way threatened or coerced Manchester. Nor are we convinced that the circumstances surrounding his being stopped were so inherently coercive that they vitiated Manchester's consent. Rather, we find that Manchester was involved in what this Court has termed an "exculpatory stratagem," *United States v. Ciovacco,* 518 F.2d 29, 30 (1st Cir.1975), by consenting to the search of his bag in an attempt to demonstrate his innocence. We have previously held that "knowledge that a search will inevitably prove incriminating does not negate the possibility that consent is voluntary and not the product of coercion." *Id.* at 31. Here, we find that there is simply no basis for Manchester's contention that he did not voluntarily consent to the search of his bag prior to the time he was placed under arrest.

We conclude that Manchester's Fourth Amendment right to be free from unreasonable seizure was not violated, and that he voluntarily consented to the search of his bag prior to the time he was placed under arrest. The district court, therefore, properly denied defendant's motion to suppress the evidence seized from him as a result of a warrantless search.[2]

Affirmed.

2. Judge Breyer, for the reasons set out in his dissent in *United States v. Berryman,* 706 F.2d 1241 (1st Cir.1983), simply concurs in the result.