**UNITED STATES of America**

v.

**Willie C. DAVIS, Jr. a/k/a Reggie Knight.**

**Crim. No. 85–477–W.**

United States District Court, D. Massachusetts.

March 11, 1986.

Mitchell Dembin, Asst. U.S. Atty., Boston, Mass., for plaintiff.

Owen Walker, Federal Defender, Boston, Mass., for defendant.

### MEMORANDUM AND ORDER

WOLF, District Judge.

Defendant, Willie C. Davis a/k/a Reggie Knight, was arrested at Logan Airport on December 11, 1985, and indicted by a grand jury on December 19, 1985, for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On January 15, 1986, defendant moved to suppress all evidence taken from him or his luggage by government agents and all statements made by him to government agents as a result of such evidence being seized. Defendant contends that this evidence was taken from him in violation of his rights under the Fourth Amendment against unreasonable searches and seizures.

The court held an evidentiary hearing on February 4, 1986. (the "Suppression Hearing"). The sole witness at this hearing was Herbert J. Lemon, Jr., one of the Drug Enforcement Administration ("DEA") Special Agents who arrested defendant.[1] At the court's request, the parties filed supplemental memoranda on February 11, 1986, at which time this matter was taken under advisement.

For the reasons stated below, the court finds that the evidence in question was not discovered as a result of an unreasonable

---

1. By agreement of the parties, the transcript of defendant's January 8, 1986, detention hearing (the "Detention Hearing") was made part of the record of the Suppression Hearing. *J* on was the only witness to testify at tion Hearing.

seizure or search. Defendant's motion to suppress must, therefore, be denied

## I. *Findings of Fact*

Based on the uncontradicted evidence presented at the Suppression Hearing, which the court finds credible, the court finds the facts of this case as follows.

On December 11, 1985, Agent Lemon was on duty at Logan Airport, at Gate Four of the Eastern Airlines Terminal. He was dressed in a suit and tie. Lemon has been a DEA Agent for 15 years and has participated in more than 100 arrests. Transcript of Suppression Hearing ("Tr.") at 4–5. At approximately 4:00 p.m., Agent Lemon observed defendant exit Eastern flight number 914 from Miami, Florida. He noticed defendant because defendant was the third from last person off the plane. Tr. at 5–7. Lemon also noticed that two people were following close behind defendant—a male five feet behind defendant and a female about ten feet behind defendant. Tr. at 7. Lemon observed all three walking at a very rapid pace and nodding to each other. He concluded that the three people were trying to communicate without appearing as if they were traveling together. He also concluded that defendant was in control of the other two. Tr. at 7–8.

Lemon followed the three people. Tr. at 8. He observed defendant nodding back to the others as they were taking the escalator down to the main concourse. Tr. at 9. He also observed that defendant was carrying a red, canvas gym bag and a small, brown paper bag. The male suspect had one piece of luggage and the female suspect was carrying a purse. *Id.*

The trio, still walking some distance apart, exited the terminal building without stopping to claim baggage and proceeded to the area where taxi cabs were parked. *Id.* Agent Lemon followed them out of the building. He approached defendant on the sidewalk, identified himself as a federal agent, and asked defendant if he would speak with him. Tr. at 10. Defendant responded that he would talk with Agent Lemon. *Id.*

Lemon first asked defendant from where he had arrived. Defendant initially did not answer and then repeated the question. After defendant still did not answer, Lemon asked him if he had just arrived from Miami. Defendant repeated the question, and said yes, he had arrived from Miami. *Id.* While Lemon was speaking with defendant, Special Agent Mieczyslaw K. Swidwinski, also dressed in civilian clothes, joined Lemon and began speaking with the other male suspect. Tr. at 12–13.

The two other suspects had been standing nearby, watching Lemon speak to the defendant. Lemon asked defendant if he was traveling with them. Defendant "hesitated, repeated the question, hesitated again, and then stated that he was not with the other two individuals." Tr. at 11.

Agent Lemon next asked defendant if he had his plane ticket. Defendant responded by showing Lemon two boarding passes with the names Reggie Knight and Donald Robinson on them. After examining the boarding passes, Lemon returned them to defendant and asked again if defendant had his ticket. Tr. at 11. Defendant repeated the question, hesitated, and said he must have left his ticket on the plane. Tr. at 12.

Lemon then asked defendant if he had any identification. Defendant repeated the question and then answered that he did not have any identification. *Id.* Shortly thereafter, Lemon noticed the female suspect walk behind defendant. Defendant stepped back toward her. It appeared to Lemon that defendant's hands were moving behind his back. Tr. at 13. Lemon stepped around defendant and saw him trying to pass a black card case to the female suspect. Lemon intercepted the case. He opened the case, saw some papers in it, but did not examine its contents. Tr. at 17–18, 62. He then asked defendant what the case contained. Defendant repeated the question and then answered that the case contained telephone numbers and some identification. Tr. at 13.

At that point, Lemon asked defendant if he had any drugs in his gym bag. Defend-

ant said that he did not have drugs in the bag. Tr. at 14. Lemon told defendant he was going to see if a drug dog was in the airport because, if so, he was going to have the dog sniff defendant's bag to see if it contained drugs. *Id.* Defendant shrugged his shoulders but did not otherwise respond. *Id.*

Lemon then asked defendant if he could look in defendant's gym bag. Defendant said he could look in the bag. Tr. at 14.[2] Lemon next asked Swidwinski to search defendant's bag. Swidwinski found about one pound of cocaine and some marijuana. Tr. at 15. Defendant's plane ticket was also in the bag. *Id.*

Lemon then arrested defendant. A subsequent search of defendant's card case revealed that it contained a small quantity of cocaine. Tr. at 62–63.

## II. *Conclusions of Law*

Defendant has moved to suppress all evidence resulting from the search of his bag. He contends that (1) defendant was unlawfully stopped; (2) defendant's card case was illegally seized; (3) that the defendant's card case was illegally opened; (4) the unlawful seizure and/or opening of the case tainted the subsequent search; and (5) defendant did not voluntarily consent to the search of his gym bag. The government responds that (1) the Fourth Amendment was not implicated by the initial stop; (2) Lemon had a reasonable suspicion for seizing defendant's card case; (3) the opening of the card case was improper, but did not taint the subsequent search; and (4) defendant voluntarily consented to the search of his bag. The court concludes

that the government has borne its burden of proving that its contentions are correct. *United States v. Finucan,* 708 F.2d 838, 844 (1st Cir.1983).

### A. *The Initial Stop and Subsequent Detention*

■ The court finds that the initial stop was the type of consensual encounter that does not implicate the Fourth Amendment.[3] *Florida v. Rodriquez,* 469 U.S. 1, 105 S.Ct. 308, 310–11, 83 L.Ed.2d 165 (1984). The Supreme Court recently stated that:

[L]aw enforcement officers do not violate [or implicate] the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.... Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. *United States v. Mendenhall,* 446 U.S. 544, 555 [100 S.Ct. 1870, 1877–78, 64 L.Ed.2d 497] (1980) (opinion of Stewart, J.).

*Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (opinion of White, J.) A suspect is not seized as long as a reasonable person in his position would have believed that he was not free to leave. *Mendenhall,* 446 U.S. at 554–55, 100 S.Ct. at 1877–78 (opinion of Stewart, J.);[4] *Terry v. Ohio,* 392 U.S. 1,

---

**2.** At the Suppression Hearing Lemon testified that he also asked the defendant if he was sure Lemon could look in the bag. Tr. at 14, 63. At the Detention Hearing, Agent Lemon did not testify that he asked defendant a second time if he was sure Lemon could search his bag. In view of the fact that Lemon uniformly testified, and it is not disputed, that the defendant stated at least once that Agent Lemon could look in the bag, the court does not consider the discrepancy between the testimony at the Detention Hearing and Suppression Hearing to be material and has decided this matter on the assumption that Lemon asked only once.

**3.** The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

**4.** In *Mendenhall,* the court held that:
[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatence of several officers, the display

16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).

 In this case, up to the point that Lemon seized defendant's card case, a reasonable person in defendant's position would have felt free to walk away from the agent, or at least refuse to speak with him. Lemon approached defendant, identified himself as a federal agent, and asked defendant if he minded answering some questions. The agent was dressed in a business suit, did not display a weapon, did not touch defendant, and did not use forceful language. *Mendenhall*, 446 U.S. at 554–55, 100 S.Ct. at 1877–78 (opinion of Stewart, J.). Defendant did not object to speaking with Agent Lemon.[5] The totality of circumstances indicate that from the time at which Lemon initially stopped defendant, to the point where he intercepted defendant's card case, a Fourth Amendment seizure of defendant had not occurred. *Cf. United States v. Place*, 462 U.S. 696, 701, 707–08, 103 S.Ct. 2637, 2641, 2644–45, 77 L.Ed.2d 110 (1983) (defendant was "seized" when agents detained his luggage); *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326 (opinion of White, J.) (asking for and examining suspect's ticket and driver's license did not constitute seizure); *Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1877–78 (opinion of Stewart, J.) (suspect not seized "simply by reason of the fact that the agents approached her, asked her if she would show them identification, and posed to her a few questions"); *United States v. Berryman*, 717 F.2d 650, 661 (1st Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 125 (1984) (defendant was not seized at least until after agents found gift-wrapped package in his luggage).[6]

 Even if defendant were seized prior to the interception of the card case, the court is persuaded that Lemon had a reasonable, articulable suspicion for stopping him. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 (a law enforcement officer may seize or detain a person without a warrant issued upon probable cause if he has developed a reasonable, articulable suspicion that the person is engaged or is about to engage in criminal activity).[7] Defendant arrived in Boston from Miami, a major drug source city. He was the third from last person off the plane.[8] Defendant walked at an extremely rapid pace and was apparently trying to conceal the fact that he was traveling with two other people. On at least two occasions, defendant turned and nodded at

---

on by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.... In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

446 U.S. at 554–55, 100 S.Ct. at 1877.

5. A government agent is not required to give a *Miranda*-type warning before he asks questions of a person suspected of engaging in criminal activity. *United States v. Berryman*, 717 F.2d 650, 662 (1st Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 125 (1984). *See also Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1877–78 (opinion of Stewart, J.).

6. Defendant's person was seized as soon as Agent Lemon intercepted his card case. *Place*, 462 U.S. at 708, 103 S.Ct. at 2645. At that point, he could not have walked away without leaving the case behind. It is also doubtful whether Lemon would have allowed him to leave at that point. However, just as Lemon had reasonable suspicion for seizing defendant's case, *see* section II.B., *infra*, he also had reasonable suspicion for seizing defendant's person after seeing him try to pass the case to the female suspect.

7. It is well-settled that the *Terry* exception applies to investigative stops in airports. *See Rodriguez*, 105 S.Ct. at 310; *Place*, 462 U.S. at 700–03, 103 S.Ct. at 2641–42; *Royer*, 460 U.S. at 498–99, 103 S.Ct. at 1324–25 (opinion of White, J.); *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753–54, 65 L.Ed.2d 890 (1980) (per curiam); *Mendenhall*, 446 U.S. at 551–55, 100 S.Ct. at 1875–78 (opinion of Stewart, J.); *Berryman*, 717 F.2d at 660; *United States v. Jodoin*, 672 F.2d 232 (1st Cir.1982); *United States v. Regan*, 687 F.2d 531 (1st Cir.1982); *United States v. Viegas*, 639 F.2d 42, 44 (1st Cir.), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981).

8. Agent Lemon testified that it is common for drug couriers to be either among the first or last off an airplane. Tr. at 7.

his two partners. Moreover, defendant did not stop to pick up any baggage.[9]

Based on these facts, compared to those of the applicable precedents, *see, e.g., Rodriquez*, 105 S.Ct. 308; *Place*, 462 U.S. 696, 103 S.Ct. 2637; *Royer*, 460 U.S. 491, 103 S.Ct. 1319; *Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870; *Berryman*, 717 F.2d at 660, giving due deference to Agent Lemon's experience and training as a drug enforcement officer, *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Mendenhall*, 446 U.S. at 566, 100 S.Ct. at 1883 (opinion of Powell, J.), and assuming that the initial approach to defendant was a *Terry* stop, the court concludes that Lemon had a reasonable suspicion for making that stop.

Defendant's answers to Agent Lemon's initial questions provided additional objective grounds for suspecting that defendant was engaging in criminal activity and justified detaining him further. *Berryman*, 717 F.2d at 663 (defendant's answers to agent's questions following consensual stop can provide basis for further detention or arrest). After agreeing to speak with Agent Lemon, defendant proceeded to answer the agent's questions, but only with great hesitation. Defendant also denied that the two other suspects were traveling with him, even though they stopped and waited while Lemon questioned defendant. In addition, defendant was unable to produce his ticket or identification.

### B. *The Seizure of the Card Case*

■ Agent Lemon was also justified in seizing defendant's card case. In *United States v. Place*, 462 U.S. at 706, 103 S.Ct. at 2644, the Supreme Court held that a law enforcement officer may seize property if he has a reasonable, articulable suspicion that the property contains contraband or

evidence of crime.[10] Lemon's suspicion was reasonably aroused by defendant's previous behavior, defendant's previous statements, and, particularly, defendant's attempt to pass his card case to the female whom he had claimed was not traveling with him. Thus, the agent did not violate defendant's Fourth Amendment rights by intercepting the card case.

### C. *The Opening of the Card Case*

Agent Lemon was not justified in opening defendant's card case. After taking the case from defendant, Lemon unfolded it and saw papers inside the case. Tr. at 17, 62. He did not then examine the contents of the case. *Id.* As the government concedes, Lemon violated defendant's Fourth Amendment rights by searching the card case without a warrant. *Place*, 462 U.S. at 701, 103 S.Ct. at 2641; *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Government's Supplemental Response to Defendant's Motion to Suppress Evidence, at 3.

Defendant contends that all evidence discovered after Agent Lemon opened the card case must be suppressed as "fruit of the poisonous tree." *See United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 463 (1980); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The court disagrees.

It is axiomatic that in order to exclude evidence on Fourth Amendment grounds, it must be the direct or indirect product of unlawful government conduct. *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 3391–92, 82 L.Ed.2d 599 (1984) ("Suppression is not justified unless the 'challenged evidence is in some sense the product of illegal governmental activity.' *United States v. Crews*, 445 U.S. at 471 [100 S.Ct.

---

**9.** Lemon suggested that it is common for drug couriers not to check baggage. Tr. at 10.

**10.** Defendant argues that the *Place* decision applies only to luggage or bags that can be subjected to a dog sniff; *i.e.*, not to smaller effects like defendant's card case which are likely to contain more personal items such as identification and less likely to contain contraband. Defendant's argument is inconsistent with the language

of *Place* by which the Court spoke of the seizure of "property" and "effects," not just "luggage" or "suitcases." 462 U.S. at 706, 103 S.Ct. at 2644. Defendant's position also ignores the fact that his card case did in fact contain contraband. As the post-arrest examination of the card case demonstrated, such items may contain contraband.

at 1250].'"). Here, the initial opening of defendant's card case produced no evidence, directly or indirectly. While Lemon saw papers inside the case, he did not examine the contents. There is nothing in the record to indicate—and the court does not believe—that Lemon saw something inside the case that made him more suspicious than he already was, or in any other way led him to search for further evidence. As set forth below, at the time the case was seized, and before it was open, there was abundant reason for Lemon to seek to search the gym bag. The court finds he would have done so even if he had not opened the card case after intercepting it. It cannot be said that 'but for' the opening, Lemon would not have asked to examine the gym bag. *Segura*, 105 S.Ct. at 3391–3392. Rather, the request which led to the discovery of the cocaine was inevitable once the card case was intercepted. Thus, the court finds that evidence discovered after Swidwinski opened defendant's gym bag was not causally connected to the unlawful opening of defendant's card case. *Id.*

In addition, as discussed below, the court finds that defendant's consent was voluntary and was not premised on or affected by the opening of the card case. Thus, this consent was an independent, intervening circumstance that purged any taint arguably created by the unlawful opening. *Segura*, 105 S.Ct. at 3386; *Crews*, 445 U.S. at 470–71, 100 S.Ct. at 1249–50; *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417–18; [11] *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920); *United States v. Palumbo*, 742 F.2d 656, 659–61 (1st Cir.1984); *United States v. King*, 724 F.2d 253, 256 (1st Cir.1984) *later appeal*, 753 F.2d 1 (1985); *U.S. v. Finucan*, 708 F.2d 838, 843 (1st Cir.1983).

In sum, while Agent Lemon improperly opened defendant's card case, the court concludes that this action was not causally connected to the subsequent discovery of cocaine in defendant's gym bag because the opening did not disclose anything that influenced Lemon to seek to search the bag; at the time of the opening an effort to discover whether there were drugs in the bag was inevitable; and, in any event, defendant's consent to the search purged it of any arguable taint created by the improper opening of the card case.

### D. *The Search of Defendant's Bag*

Defendant contends that he did not voluntarily or freely consent to the search of his bag. Consequently, he argues that all evidence resulting from the search must be suppressed. The court disagrees and finds that defendant's consent was free and given voluntarily.

"A search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The government "has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). In *Schneckloth* the Court stated that the totality of the circumstances should be considered in determining whether consent was voluntary and freely given, including "the characteristics of the accused and the details of the interrogation." 412 U.S. at 226, 93 S.Ct. at 2047. Other factors that may be taken into account include, "the youth of the accused, ... his lack of education, ... or his low intelligence, ... the lack of any advice to the accused of his constitutional rights, ... the length of detention, ... the repeated and prolonged nature of the questioning, ...

---

**11.** In *Wong Sun* the Court stated that:
[T]he more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
371 U.S. at 488, 83 S.Ct. at 417 (quoting J.M. Maguire, *Evidence of Guilt* 221 (1959)).

and the use of physical punishment such as the deprivation of food or sleep...." *Id.* (citations omitted). None of these factors standing alone, however, requires the court to find that consent was not voluntary. *Id.* at 226–27, 93 S.Ct. at 2047–48.

 Defendant does not dispute that he consented to the search of his bag. Instead, he first argues that his consent was not voluntary because it followed shortly after his unlawful detention and the unlawful and inherently coercive taking and opening of his card case. He relies in part upon the Supreme Court's ruling in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (opinion of White, J.), that a suspect's consent is invalid when it is obtained after he is unlawfully detained. This principle is inapplicable in this case, however, because, as described earlier, the defendant was lawfully seized. Thus defendant's consent was not improperly influenced by an unlawful detention. *Royer*, 460 U.S. at 502, 103 S.Ct. at 1326–27 (opinion of White, J.) ("We also agree that had Royer voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him."). *See Mendenhall*, 446 U.S. at 559, 100 S.Ct. at 1879–80 (opinion of Stewart, J.) (consent not invalid where it follows lawful detention).

In addition, the court finds that the seizure of the case was not improper or coercive. As described earlier, Lemon was legally permitted and practically required to intercept the case. Such legally justified action does not tend to establish unlawful coercion. While the brief opening of the case was unlawful, the court is persuaded that its effect on defendant was at most *de minimis* in view of the lawful seizure and the legally appropriate expression of intent to try to find a drug-sniffing dog discussed below.

 Defendant does assert that Lemon coerced him into consenting to the search of his bag by threatening to get a drug dog before asking for defendant's consent. The court again disagrees. "Bowing to events, even if one is not happy about them, is not the same thing as being coerced." *Robbins v. MacKenzie*, 364 F.2d 45, 50 (1st Cir.), *cert. denied*, 385 U.S. 913, 87 S.Ct. 215, 17 L.Ed.2d 140 (1966). It has been held that a good faith assertion by a police officer that he would seek a warrant if the suspect did not consent to a search did not make the suspect's subsequent consent involuntary. *United States v. Miller*, 589 F.2d 1117, 1132 n. 13 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *see also United States v. Vasquez*, 638 F.2d 507, 528–29 (2d Cir. 1980), *cert. denied sub nom. Mesa v. United States*, 450 U.S. 970, 454 U.S. 847, 101 S.Ct. 1490, 102 S.Ct. 165, 67 L.Ed.2d 620, 70 L.Ed.2d 135, and *Vasquez v. United States*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981) (" 'the well-founded advice of a law enforcement officer that, absent consent to search, a warrant can be obtained does not constitute coercion' "). A comparable, good faith expression of intent to try to get a dog does not render defendant's consent involuntary.

Defendant does not contend that Lemon's assertion that he was going to look for a dog was made in bad faith. Nor does he dispute that had defendant withheld consent, Lemon properly could have had a dog sniff the bag, assuming that the dog could have been located within a reasonably short period of time. *Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45; *United States v. West*, 731 F.2d 90 (1st Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985). Thus, the court concludes that defendant's consent was not coerced by Lemon's assertion that he was going to seek to get a drug dog. *Miller*, 589 F.2d at 1132.

Although the court has found that defendant's individual claims of coercion are each without merit, it has also considered them together, in the context of the totality of the circumstances, with a view to determining whether the government's cumulative conduct was unlawfully coercive. The court concludes it was not.

There is no evidence regarding defendant's age, education, or mental capacity suggesting that he was incapable of voluntarily consenting to the search. Neither Agent Lemon nor Agent Swidwinski displayed any weapons, used forceful language, or physically touched defendant. The seizure of defendant's card case had no coercive effect on defendant and any arguable further effect of the unlawful opening of the card case was at most *de minimus.* The statement that a dog would be sought had no improper influence on defendant. Moreover, defendant's detention was brief and in a public place, thus reducing the likelihood of coercion. *See Royer,* 460 U.S. at 505, 103 S.Ct. at 1328 (opinion of White, J.) ("had Royer consented to a search on the spot ... any evidence recovered would have been admisible against him").

■ Defendant's possible ignorance of his right to refuse to consent to the search militates in favor of a finding of coercion.[12] *Royer,* 460 U.S. at 503, 103 S.Ct. at 1327 (opinion of White, J.); *Mendenhall,* 446 U.S. at 559, 100 S.Ct. at 1879–80 (opinion of Stewart, J.). The absence of such advice, however, does not, by itself, invalidate his consent. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48 (knowledge of right to refuse to consent is not required to show effective consent). The court finds that the possible effect of a lack of an advice of rights is outweighed in this case by the generally noncoercive, lawful nature of the agent's conversation, conduct, and detention of defendant.[13] Thus, based on the totality of the circumstances, the court concludes that defendant's consent was voluntarily and freely given.

**12.** Neither party introduced any evidence bearing on this issue.

**13.** The court has also considered the contention that it would have been irrational for defendant to consent voluntarily to the search of his bag given that he likely knew it contained cocaine. This claim is not persuasive. As the First Circuit has held, "'Knowledge that a search will inevitably prove incriminating does not negate the possibility that consent is voluntary and not the product of coercion.'" *United States v. Manchester,* 711 F.2d 458, 462 (1st Cir.1983) (quoting *United States v. Ciovacco,* 518 F.2d 29,

In view of the foregoing, defendant's motion to suppress is hereby DENIED.

31 (1st Cir.1975)). Here, it is entirely possible that defendant consented to the search hoping that Agent Lemon would not actually look through his bag or that he could successfully deny that he knew it contained drugs. Alternatively, defendant might rationally have thought that his interests would have been better served by cooperating with the agents. In any case, the fact that he might have known that his bag contained drugs does not alter the validity of his consent. *Id.* The fact that, in retrospect, consent may seem foolishly given does not mean that it was not freely given.